[No. A070517. First Dist., Div. Three. May 20, 1996.]

BUILDING INDUSTRY ASSOCIATION OF NORTHERN
CALIFORNIA, Plaintiff and Appellant, v.
CITY OF LIVERMORE et al., Defendants and Respondents.

**COUNSEL**

Lanferman, Fisher & Hashimoto, David P. Lanferman and Paul B. Campos for Plaintiff and Appellant.

Meyers, Nave, Riback, Silver & Wilson, Andrea J. Saltzman, Steven R. Meyers, Rick W. Jarvis, Thomas R. Curry and Daniel G. Sodergren for Defendants and Respondents.

Robert K. Booth, Jr., and Marc G. Hynes as Amici Curiae on behalf of Defendants and Respondents.

OPINION

PARRILLI, J.—This case presents a single straightforward issue: can California cities require builders to install residential fire sprinkler systems in new or substantially remodeled single-family dwellings? The simple answer to this question is "yes." Unfortunately, because the Legislature has not spoken clearly concerning this issue, the analysis which leads to this conclusion is neither straightforward nor simple.

I

FACTS

In 1992 the City of Livermore (City) updated its building code by enacting ordinance No. 1389. Ordinance No. 1389 adopted the 1991 version of the Uniform Building Code, with certain amendments. In particular, the City amended section 3802 of the 1991 Uniform Building Code, which, in its original version, required automatic fire-extinguishing systems in most buildings except single-family dwellings and duplexes.[1] Ordinance No. 1389 effectively removed this exception and required automatic fire-extinguishing systems in all new construction, including single-family dwellings. (City of Livermore Ord. No. 1389, § 2, p. 8.)[2] To support this amendment, the Livermore City Council made detailed findings that the more stringent

[1] Section 3802 of the 1991 Uniform Building Code provided that "[a]n automatic fire-extinguishing system shall be installed in all the occupancies and locations as set forth in this section. [¶] . . . [¶] (b) . . . Except for Group R, Division 3 and Group M Occupancies, an automatic sprinkler system shall be installed" in all buildings which meet certain specifications. Group R, Division 3 occupancies include "dwellings." (1991 U. Building Code, § 1201.)

The Uniform Building Code was amended in 1994. The provision formerly found at section 3802 of the 1991 code is now codified, with some amendments, in sections 904.2.1 and 904.2.2 of the 1994 Uniform Building Code. Those sections provide: "An automatic fire-extinguishing system shall be installed in the occupancies and locations as set forth in this section. [¶] . . . [¶] Except for Group R, Division 3 and Group U Occupancies, an automatic sprinkler system shall be installed" in all buildings which meet certain specifications. (Cal. Code Regs., tit. 24, §§ 904.2.1, 904.2.2.) Group R, Division 3 occupancies include "dwellings." (Cal. Code Regs., tit. 24, § 310.1.)

[2] Ordinance No. 1389 also requires that all existing buildings and structures be retrofitted with automatic fire-extinguishing systems in certain circumstances. The ordinance provides in pertinent part:

"UBC Section 3802 is amended to read as follows:

requirements for automatic fire-extinguishing systems were reasonably necessary due to local climatic, geological and topographical conditions. (Health & Saf. Code, §§ 17958.5, 17958.7.)[3]

The City codified the new requirement for automatic fire-extinguishing systems in section 15.04.180 of the Livermore Municipal Code (hereafter municipal code section 15.04.180). Section 15.04.180 requires builders to install automatic fire-extinguishing systems in all new residential dwellings, including single-family residences.

In 1995 the Building Industry Association of Northern California (Building Association) filed a complaint for declaratory and injunctive relief to prevent the City from enforcing municipal code section 15.04.180. The complaint alleged that state law fully occupied and regulated the field of residential construction and fire safety standards, and the City therefore lacked authority to enact local building standards that differ from state standards. In particular, the Building Association alleged the City had no authority to require builders to install automatic fire sprinkler systems[4] in newly constructed single-family dwellings, as this was not required by state law.

The trial court sustained the City's demurrer to the complaint. The court stated that state law did not preempt the challenged ordinance. The court

"Section 3802 (a) Where Required. An Automatic fire-extinguishing system or other approved combined system shall be installed in all occupancies and locations.
"  .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .
"(b) Existing Buildings or Structure. All existing buildings and structures, regardless of the type of occupancy, or area shall be provided with an automatic fire-extinguishing system . . . under the following conditions:
"(1) Additions to any building creating an area exceeding Five thousand (5000) square feet.
"(2) Alterations or repairs to any building Five Thousand (5000) square feet or larger or portion thereof, that exceeds Twenty-five (25%) percent of the value of the building, within any twelve month period.
"  .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .
"(3) Whenever a change in occupancy of use increases the fire hazard to the structure or the life safety of the occupants.
"  .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .
"(5) Any detached or attached structure added to any parcel of land containing sprinkled buildings.
"(6) New attached or detached R occupancies containing a dwelling, dwelling unit. or efficiency dwelling unit."
[3]Subsequent statutory references are to the Health and Safety Code, unless otherwise noted.
[4]In their briefs, the parties refer to "fire sprinklers" rather than to "automatic fire-extinguishing systems," which is the language used in section 15.04.180. Although "fire sprinklers" are arguably just one subset of the broader category of "automatic fire-extinguishing systems," in this opinion we use both terms synonymously to mean all automatic fire-extinguishing systems.

found that sections 17958.5 and 17958.7 granted the City authority to enact an ordinance requiring fire sprinklers in all new single-family residences based on local climatic, topographical, and geological conditions. The Building Association then filed a petition for writ of mandate in this court which this division summarily denied. The trial court entered judgment dismissing the complaint and the Building Association filed this timely appeal.

II

DISCUSSION

As we explain in more detail below, our state Legislature has clearly expressed its intent to fully occupy the field of building standards. Consequently, a local government is precluded from enacting building standards that differ from state standards unless a state statute specifically authorizes the local government to do so. In this case, the City contends sections 17958, 17958.5, and 17958.7 authorized it to adopt more stringent residential fire sprinkler standards based on local climatic, geological and topographical conditions. We agree with the City's position.

A. *State Law Preempts the Field of Housing Building Standards*

Article XI, section 7 of the California Constitution provides that municipalities may enact and enforce ordinances "not in conflict with general laws." An ordinance that conflicts with state law is void. (*Cedar Shake & Shingle Bur.* v. *City of Los Angeles* (9th Cir. 1993) 997 F.2d 620, 623 (*Cedar Shake*); *Bruce* v. *City of Alameda* (1985) 166 Cal.App.3d 18 [212 Cal.Rptr. 304].) "Conflicts exist if the ordinance duplicates [citations], contradicts [citation], or enters an area fully occupied by general law, either expressly or by legislative implication [citations]. If the subject matter or field of the legislation has been fully occupied by the state, there is no room for supplementary or complementary local legislation, even if the subject [was] otherwise one properly characterized as a 'municipal affair.' [Citations.]" (*Lancaster* v. *Municipal Court* (1972) 6 Cal.3d 805, 807-808 [100 Cal.Rptr. 609, 494 P.2d 681], quoted in *Cohen* v. *Board of Supervisors* (1985) 40 Cal.3d 277, 290-291 [219 Cal.Rptr. 467, 707 P.2d 840].)

It is clear municipal code section 15.04.180 does not directly contradict state law. A builder can comply with both by complying with the more stringent City requirements for fire sprinklers. (*Cedar Shake, supra,* 997 F.2d at p. 623.) However, the Legislature has expressed an intent to fully occupy the field of building standards relating to housing.

In *Briseno* v. *City of Santa Ana* (1992) 6 Cal.App.4th 1378 [8 Cal.Rptr.2d 486] (*Briseno*), the Fourth District concluded that the state has generally

preempted the field of housing construction standards. As the *Briseno* court observed, "[o]ne need only track the history of the state's housing laws to appreciate the Legislature's desire to preempt local regulation generally." (*Id.* at p. 1382.) The State Housing Law (§§ 17910-17995.5) requires the state to adopt statewide building standards for residential housing. (§§ 17920, subd. (e), 17921, 17950; *Cedar Shake, supra,* 997 F.2d at p. 624, fn. 3.) Before 1970, the State Housing Law expressly permitted counties and municipalities to " 'enact ordinances or regulations imposing restrictions equal to or greater than those imposed' " by the State Housing Law. (Former § 17951, subd. (a), quoted in *Briseno, supra,* at p. 1382.) "Thus, prior to 1970, state building and housing requirements did not preempt the field." (*Briseno, supra,* at p. 1382; see *City of Bakersfield* v. *Miller* (1966) 64 Cal.2d 93, 100-101 [48 Cal.Rptr. 889, 410 P.2d 393].)

However, " '[i]n 1970, the Legislature amended section 17951 by deleting the provision authorizing local agencies to adopt ordinances imposing standards "equal to or greater" than those promulgated by the state, . . . and made other substantial revisions in the State Housing Law. [Citation.] The revisions directed [the state] to adopt rules and regulations imposing "the same requirements" as are contained in the various uniform building codes . . . and required every city and county to adopt ordinances or regulations imposing the same requirements . . . .' (*Baum Electric Co.* v. *City of Huntington Beach* (1973) 33 Cal.App.3d 573, 577 [109 Cal.Rptr. 260].) It is clear that the 1970 amendments to the state housing laws evidence a legislative intent to generally preempt local regulation in the field." (*Briseno, supra,* 6 Cal.App.4th at p. 1382, fn. omitted; see also *Danville Fire Protection Dist.* v. *Duffel Financial & Constr. Co.* (1976) 58 Cal.App.3d 241, 247-248 [129 Cal.Rptr. 882] [concluding that previous, less comprehensive scheme occupied the field]; accord, *Cedar Shake, supra,* 997 F.2d at p. 623; *ABS Institute* v. *City of Lancaster* (1994) 24 Cal.App.4th 285, 288-289 [29 Cal.Rptr.2d 224].[5])

As the *Briseno* court further reasoned, we may also infer the Legislature intended to occupy the field because it "has prescribed the manner in which local authorities can adopt ordinances which vary from the uniform codes."

---

[5]As the *ABS Institute* court succinctly stated: "Until the 1970's, every city and county in California adopted its own building code, unfettered by mandated state standards or state control. (*City of Bakersfield* v. *Miller* (1966) 64 Cal.2d 93, 97 [48 Cal.Rptr. 889, 410 P.2d 393].) In 1970, the Legislature put an end to all that by declaring a statewide interest in uniform building codes (Stats. 1970, ch. 1436, § 7, p. 2785) and otherwise expressing an intent to generally preempt the field. (*Baum Electric Co.* v. *City of Huntington Beach* (1973) 33 Cal.App.3d 573, 577 [109 Cal.Rptr. 260]; see also *Danville Fire Protection Dist.* v. *Duffel Financial & Constr. Co.* (1976) 58 Cal.App.3d 241, 248 [129 Cal.Rptr. 882].) But that is not to say that local authorities may never adopt ordinances which vary from the uniform codes." (24 Cal.App.4th at pp. 288-289.)

(6 Cal.App.4th at p. 1382.) For example, section 17958.5, subdivision (a) allows local governments to amend the uniform codes by enacting more restrictive ordinances if they are justified by local climatic, geological, or topographical conditions. "[I]t makes little sense to prescribe a narrow set of circumstances in which local entities can override state law if those entities are already free to [do so] with impunity." (6 Cal.App.4th at p. 1383.)

We find *Briseno*'s reasoning persuasive, and therefore join the other courts which have unanimously concluded that our state has generally preempted the field of residential building standards. (*ABS Institute* v. *City of Lancaster, supra,* 24 Cal.App.4th at pp. 288-289; *Cedar Shake, supra,* 997 F.2d at p. 623; *Briseno, supra,* 6 Cal.App.4th at pp. 1382-1383; *Danville Fire Protection Dist.* v. *Duffel Financial & Constr. Co., supra,* 58 Cal.App.3d at pp. 247-248.)

The City's argument to the contrary evidences a basic misunderstanding of the law of preemption. The City argues that because the state granted local governments the power to depart from state standards in certain instances, this means the state did not intend to fully occupy the field of building standards relating to housing. However, as the *Briseno* court noted, the opposite is true. Because the state has specifically delineated where and in what manner local authorities may "adopt ordinances which vary from the uniform codes," this means the Legislature intended to preempt local government's power to legislate in the field of housing building standards, except as specifically permitted by state statutes. (*Briseno, supra,* 6 Cal.App.4th at pp. 1382-1383; see §§ 17958.5, subd. (a), 17958.7, subd. (a) [permitting localities to amend building standards based on local climatic, geological, or topographical conditions but requiring local governments to make specific findings to do so]; § 17922, subd. (b) [reserving to local jurisdictions power over "local use zone requirements, local fire zones, building setback, side and rear yard requirements, and property line requirements"]; § 17951, subd. (d)(2) [allowing local governments to approve alternate material or methods of construction provided that the alternate has been approved by the state and is "for the purpose intended, at least the equivalent of that prescribed in the California Building Standards Code"].)

It is true that the power granted to the local authorities by the state in this area is broad; however, because the state has preempted this area, that authority must be exercised pursuant to a specific statutory grant of authority, not pursuant to the local government's general police power. (*ABS Institute* v. *City of Lancaster, supra,* 24 Cal.App.4th at pp. 288, 293.)

B. *State Law Authorizes a City to Adopt More Restrictive Automatic Fire-extinguishing System Requirements Based on Local Conditions*

Even though the state has generally preempted the field of residential building standards, a local government may adopt building standards that differ from state standards if a state statute specifically authorizes the local government to do so. (*Cedar Shake, supra*, 997 F.2d at p. 624.) Thus, the genuine issue in this case is whether the state has granted the City statutory authority to impose more stringent residential fire sprinkler standards than those found in the Uniform Building Code. We conclude the state has granted this authority to cities and counties where local climatic, geological, or topographical conditions justify the stricter standards. (§§ 17958, 17958.5, 17958.7; *ABS Institute* v. *City of Lancaster, supra*, 24 Cal.App.4th at p. 293.)

Section 17958 provides in part that "any city or county may make changes in the provisions adopted pursuant to Section 17922 and published in the State Building Standards Code or the other regulations thereafter adopted pursuant to Section 17922 . . . upon express findings pursuant to Sections 17958.5 and 17958.7." Section 17958.5, subdivision (a) provides that ". . . a city or county may make such changes or modifications in the requirements contained in the provisions published in the California Building Standards Code and the other regulations adopted pursuant to Section 17922 as it determines, pursuant to the provisions of Section 17958.7, are reasonably necessary because of local climatic, geological, or topographical conditions." To qualify under this provision, the local entity must "make an express finding that such modifications or changes are reasonably necessary because of local climatic, geological or topographical conditions." (§ 17958.7, subd. (a); *ABS Institute* v. *City of Lancaster, supra*, 24 Cal.App.4th at pp. 288-289.)

In this case, the Livermore City Council expressly found that modified standards for automatic fire-extinguishing systems were necessary because of local conditions. In particular, the city council found that dry, hot, windy summers in the City had led to grass and brush fires in the grassland surrounding the City and that these conditions greatly increased the fire risk to residences, especially new residences being built in the grassland area. The council also found the City has an unusual number of topographical features which hinder fire suppression services. Finally, the council noted the City is near several earthquake faults, and that a "major seismic event"

would create a demand for fire suppression services that the City Fire Department could not meet.[6]

The Building Association has not challenged the City's findings in this regard. Instead, the Building Association contends the preemption exception established by sections 17958, 17958.5, and 17958.7 simply does not apply to residential fire sprinkler requirements. The Building Association argues this is so because residential fire sprinkler requirements are not "building standards" adopted pursuant to section 17922, but are instead "fire and panic safety standards" adopted by the State Fire Marshal under a separate procedure. Consequently, the Building Association argues that residential fire sprinkler requirements do not fall within the ambit of sections 17958, 17958.5, and 17958.7.

To understand the Building Association's argument, it is necessary to briefly outline the structure of California's statutory scheme regulating housing construction. Division 13 of the Health and Safety Code regulates housing generally; part 1.5 of that division concerns the regulation of buildings used for human habitation and is known as the State Housing Law. (*Briseno, supra,* 6 Cal.App.4th at p. 1382.) Section 17921, subdivision (a) of the State Housing Law requires the Department of Housing and Community Development (Department of Housing) to adopt building standards for the construction of dwelling units generally. (See § 17920, subd. (e).) Section 17921, subdivision (b) requires the State Fire Marshal to adopt building standards specifically relating to fire and panic safety in dwelling units. (*Cedar Shake, supra,* 997 F.2d at p. 624, fn. 3.) After adopting the standards, the State Fire Marshal and the Department of Housing submit the standards to the State Building Standards Commission. The commission evaluates the recommendations and, once approved, the standards are codified in the California Building Standards Code, title 24 of the California Code of Regulations. (997 F.2d at p. 624, fn. 3; see also *ABS Institute* v. *City of Lancaster, supra,* 24 Cal.App.4th at p. 289; §§ 18930, 18935.)[7]

Section 17922, subdivision (a) incorporates into the State Housing Law the residential building standards that are published in the California Building Standards Code. (*Cedar Shake, supra,* 997 F.2d at p. 625.) Section

---

[6]These findings were made an express part of ordinance No. 1389, and thus we may consider them in reviewing the order sustaining the City's demurrer. (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58] [in reviewing the trial court's decision to sustain a demurrer we may consider matters which may be judicially noticed]; Evid. Code, § 452, subd. (b) [court may take judicial notice of "legislative enactments issued by . . . any public entity in the United States"].)

[7]"Although it may appear that the Department and the Fire Marshal are charged with adopting standards relating to different aspects of housing construction, in operation the agencies adopt the same standards with only slight variation." (*Cedar Shake, supra,* 997 F.2d at p. 624, fn. 3.)

17922, subdivision (a) provides in pertinent part: "[T]he building standards adopted and submitted by the [Department of Housing] for approval . . . *and the other rules and regulations, which are contained in Title 24 of the California [Code of Regulations] adopted,* amended or repealed from time to time *pursuant to this chapter* shall be adopted by reference, except that the building standards and rules and regulations shall include any additions or deletions made by the department." (Italics added.)

Again, section 17958 provides in part that "any city or county may make changes in the provisions *adopted pursuant to Section 17922 and published in the State Building Standards Code* . . . upon express findings pursuant to Sections 17958.5 and 17958.7." (Italics added.) The Building Association contends that only the building standards adopted by the Department of Housing are "adopted pursuant" to section 17922. Since the rules regarding automatic fire-extinguishing systems were adopted by the State Fire Marshal, the Building Association contends they are not "adopted pursuant to section 17922" and thus do not fall within the preemption exception created by section 17958. We disagree.

The plain language of the statute indicates the State Fire Marshal's standards are "adopted pursuant to section 17922." Section 17922, subdivision (a) incorporates both "building standards adopted and submitted by the [Department of Housing]" and "*the other rules and regulations,* which are contained in Title 24 of the [California Code of Regulations], adopted . . . *pursuant to [chapter 2 of the State Housing Law].*" (Italics added.) The standards adopted by the State Fire Marshal are codified in title 24 of the California Code of Regulations. Moreover, the State Fire Marshal's dwelling standards are adopted pursuant to section 17921, subdivision (b). That provision is found in chapter 2 of the State Housing Law. Thus, the State Fire Marshal's building standards are adopted pursuant to "this chapter"; that is, chapter 2 of the State Housing Law. (*Cedar Shake, supra,* 997 F.2d at p. 625.)

Under this analysis, the State Fire Marshal's standards are "adopted pursuant to section 17922" and the City may modify those standards pursuant to section 17958 when it expressly finds that the changes are necessary because of local climatic, geological or topographical conditions.[8] (§§ 17958, 17958.5, 17958.7; *ABS Institute* v. *City of Lancaster, supra,* 24 Cal.App.4th at p. 293.)

---

[8]Our conclusion is consistent with the Legislative Counsel's opinion expressed in the Legislative Counsel's Digest of Senate Bill No. 956. That bill was enrolled in Statutes 1984, chapter 908, section 1, page 3029, and made certain amendments to the procedure for the adoption of state building standards. The Legislative Counsel's Digest of the bill states: "Existing law requires the Department of Housing and Community Development and the State Fire Marshal to adopt and submit building standards for approval by the State Building

In reaching this conclusion, we are aware the Attorney General reached the opposite conclusion in 72 Ops.Cal.Atty.Gen. 180 (1989). **(3)** "Opinions of the Attorney General, while not binding, are entitled to great weight. [Citations.] In the absence of controlling authority, these opinions are persuasive 'since the Legislature is presumed to be cognizant of that construction of the statute.' [Citation.]" (*Napa Valley Educators' Assn.* v. *Napa Valley Unified School Dist.* (1987) 194 Cal.App.3d 243, 251 [239 Cal.Rptr. 395].) **(1c)** However, we believe the opinion at issue is simply wrong, and consequently we need not follow it. (See *Moore* v. *Panish* (1982) 32 Cal.3d 535, 544 [186 Cal.Rptr. 475, 652 P.2d 32]; *IT Corp.* v. *Solano County Bd. of Supervisors* (1991) 1 Cal.4th 81, 95-96 [2 Cal.Rptr.2d 513, 820 P.2d 1023].) Moreover, after the Attorney General issued its opinion, the Legislature took action to overturn the opinion's primary conclusion. Consequently, its persuasive authority has been substantially undermined.

In 72 Ops.Cal.Atty.Gen., *supra,* at page 180, the Attorney General concluded that "Cities and counties may not adopt building standards relating to fire and panic safety that are more stringent than those adopted by the State Fire Marshal under sections 17922, 17958.5 or 17958.7 of the State Housing Law." (*Id.* at pp. 180-181.) The Attorney General recognized section 17958 permits a city or county to modify the provisions *adopted by the state pursuant to section 17922* if the local government expressly finds that the modifications are reasonably necessary because of local climatic, geological or topographical conditions. (72 Ops.Cal.Atty.Gen., *supra,* at p. 186.) However, the Attorney General concluded that section 17958 did not permit a local government to modify building standards specifically adopted by the State Fire Marshal because those standards are not adopted pursuant to section 17922. The Attorney General reasoned: "When speaking of building standards, all of the subdivisions of [section 17922] refer to those of that Department. Thus the section commences: [¶] '(a) Except as otherwise specifically provided by law, the building standards adopted and submitted by the department for approval . . . and the other rules and regulations . . . adopted . . . pursuant to this chapter . . . shall impose substantially the same requirements as are contained in the most recent editions of the

---

Standards Commission and to adopt other building regulations for . . . dwellings, in conformity with various uniform industry codes. . . . Counties and cities within one year from the effective date of provisions changing the state building standards . . . are required to impose the same requirements as the state standards and regulations, but . . . if the city or county makes an express finding of necessity due to local climatic, geographical, or topographical conditions, it may modify or change the standards or regulations." (Legis. Counsel's Dig., Sen. Bill No. 956, 4 Stats. 1984 (Reg. Sess.) Summary Dig., p. 305.) The Legislative Counsel did not distinguish between building regulations adopted by the Department of Housing and those adopted by the State Fire Marshal.

following uniform industry codes . . . .' [¶] . . . [¶] Nowhere in section 17922 is any reference made to building standards adopted by the State Fire Marshal." (72 Ops.Cal.Atty.Gen. at p. 187, underlining in original.)

The problem with this analysis is that it completely ignores the fact that section 17922, subdivision (a) incorporates *both* "building standards adopted and submitted by the [Department of Housing]" and *"the other rules and regulations,* which are contained in Title 24 of [the Code of Regulations], adopted . . . *pursuant to this chapter.*" Thus, even though the State Fire Marshal's building standards are not incorporated as "building standards adopted and submitted by the department" they are incorporated as "other rules and regulations, which are contained in Title 24 of [the Code of Regulations], adopted . . . pursuant to this chapter." (§ 17922, subd. (a).) " 'Building standards' and 'rules and regulations' are not mutually exclusive categories. Instead, building standards are, in fact, a subset of 'rules and regulations.' " (*Cedar Shake, supra,* 997 F.2d at p. 625.)[9] Thus, because a building standard is merely a specific type of rule or regulation, the building standards adopted by the State Fire Marshal fall within the general category of "other rules and regulations."

Finally, section 17958 permits local authorities to modify any provisions adopted pursuant to section 17922 and published in the State Building Standards Code, not just those adopted by the Department of Housing.

C.  *Section 13143.5*

As we have indicated, even in 1989 when the Attorney General issued its opinion on this issue, cities and counties had the power to modify building standards adopted by the State Fire Marshal if they expressly found the changes were necessary because of local climatic, geological, or topographical conditions. (§§ 17958, 17958.5, 17958.7; *ABS Institute* v. *City of Lancaster, supra,* 24 Cal.App.4th at p. 293.)

However, our analysis is complicated by the fact the Legislature took action in 1990 to undo the damage the Attorney General's 1989 opinion caused. In 1990, the Legislature introduced and enacted the Green-Hansen Fire Safety Act of 1990 (Green-Hansen Act). (Stats. 1990, ch. 1083, p. 4489;

---

[9]For the purpose of the State Housing Law, " 'Building standard' means any rule, regulation, order, or other requirement . . . which [regulates the materials or construction techniques in buildings]." (§ 18909, subd. (a); § 17920, subd. (c).) Moreover, section 18919 provides that " 'Regulation' includes building standards."

*id.*, ch. 1111, p. 4628.)[10] As pertinent to this appeal, the Green-Hansen Act added section 13143.5 to the Health and Safety Code. (Stats. 1990, ch. 1083, § 3, pp. 4490-4492; *id.*, ch. 1111, § 3, pp. 4629-4631.) As originally enacted,[11] that section provided in pertinent part:

"(a) Notwithstanding Part 2 (commencing with Section 13100) of Division 12, Part 1.5 (commencing with Section 17910) of Division 13, and Part 2.5 (commencing with Section 18901) of Division 13, *any city, county, or city and county may, by ordinance, make changes or modifications that are more stringent than the requirements published in the California Building Standards Code relating to fire and panic safety* and the other regulations adopted pursuant to this part. The adopted standards shall be reasonably necessary because of local climatic, geological, or topographical conditions. . . .

"(b) Nothing in this section shall authorize a local jurisdiction to mandate, *nor prohibit a local jurisdiction from mandating, the installation of residential fire sprinkler systems within newly constructed dwelling units or in new additions to existing dwelling units,* including, but not limited to, manufactured homes as defined in Section 18007.

"(c) Nothing in this section shall authorize a local jurisdiction to mandate, *nor prohibit a local jurisdiction from mandating,* the retrofitting of existing dwelling units for the installation of residential fire sprinkler systems, including, but not limited to, manufactured homes as defined in Section 18007." (Italics added.)

Predictably, the parties take different views on the significance of section 13143.5. The City contends the Legislature enacted section 13143.5 to clarify the power cities and counties already had under section 17958 to modify building standards relating to fire and panic safety. The City contends this legislation was necessary to remove the cloud the Attorney

---

[10]The Green-Hansen Act was enacted by parallel bills introduced in the Senate and Assembly. Assembly Member Hansen introduced Assembly Bill No. 2666 on January 23, 1990, and Senator Green introduced Senate Bill No. 1830 on the same date. Both bills were enacted. (Assem. Final Hist. (1989-1990 Reg. Sess.) p. 1757; Sen. Final Hist. (1989-1990 Reg. Sess.) p. 1219.)

[11]In 1992 section 13143.5, subdivision (a) was amended to read: "Notwithstanding Part 2 (commencing with Section 13100) of Division 12, Part 1.5 (commencing with Section 17910) of Division 13, and Part 2.5 (commencing with Section 18901) of Division 13, any city, county, or city and county may, by ordinance, make changes or modifications that are more stringent than the requirements published in the California Building Standards Code relating to fire and panic safety and the other regulations adopted pursuant to this part. Any changes or modifications that are more stringent than the requirements published in the California Building Standards Code relating to fire and panic safety shall be subject to subdivision (c) of Section 18941.5." (Stats. 1992, ch. 661.)

General's 1989 opinion placed on this power. In other words, the City argues section 13143.5 is a reaffirmation of power that previously existed, not a grant of new power. Consequently, the City argues that section 13143.5 did not affect local governments' preexisting power to require fire sprinkler systems in single-family dwellings. (§ 13143.5, subd. (b) ["Nothing in this section shall . . . prohibit a local jurisdiction from mandating . . . the installation of residential fire sprinkler systems within newly constructed dwelling units or in new additions to existing dwelling units . . . ."].)

The Building Association, on the other hand, contends the Legislature's decision to enact section 13143.5 shows that it believed the 1989 Attorney General's opinion was correct. In other words, the Building Association contends section 13143.5 proves the Legislature agreed that section 17958 did not grant local governments authority to modify building standards adopted by the State Fire Marshal. Consequently, the Building Association maintains that section 13143.5, subdivision (a) grants a new power to local governments to adopt building standards relating to fire and panic safety that are more stringent than the standards in the California Building Standards Code. However, that new power is subject to the specific exception that "[n]othing in this section shall authorize a local jurisdiction to mandate . . . the installation of residential fire sprinkler systems within newly constructed dwelling units or in new additions to existing dwelling units . . . ." (§ 13143.5, subd. (b).)

The legislative history of the Green-Hansen Act supports both positions to some extent. On the City's side, the Assembly Committee on Local Government explained in its report on the act (Assem. Bill No. 2666) that the new legislation was a direct response to the Attorney General's 1989 opinion. The report stated: "In an extremely technical opinion (88-904), the Attorney General concluded that certain sections of the state housing law do not authorize local governments to adopt stricter fire and safety regulations than those adopted by the State Fire Marshal. . . . [¶] Local governments and fire districts concerned about public safety in their communities quickly pursued legislation [this bill]. This bill responds to the Attorney General's opinion by allowing local governments and fire districts to have more stringent provisions." (Assem. Com. on Local Government, Analysis of Assem. Bill No. 2666 (1989-1990 Reg. Sess.) as amended Apr. 4, 1990.)

Similarly, in its analysis of Assembly Bill No. 2666, the Senate Housing and Urban Affairs Committee stated: "Supporters contend this measure is necessary to *restore* the authority that cities, counties and fire protection districts presumed they had to adopt building standards relating to fire and

panic safety which are more stringent than those adopted by the [State Fire Marshal]. These standards currently include such things as . . . fire sprinkler[s] . . . ." (Sen. Housing and Urban Affairs Com., Analysis of Assem. Bill No. 2666 (1989-1990 Reg. Sess.) as amended June 13, 1990, p. 4, italics added; see also Cal. State and Consumer Services Agency, State Fire Marshal, Analysis of Assem. Bill No. 2666 (1989-1990 Reg. Sess.), Sept. 7, 1990 ["AB 2666 was introduced to clarify local government's authority in this area and remove the 'cloud' " created by the Attorney General's opinion.].)

Finally, in its analysis of Assembly Bill No. 2666, the Department of Finance stated: "According to the [State Fire Marshal] and the Building Standards Commission, [local governments] felt they had the statutory authorization to adopt more stringent standards pursuant to . . . section 17958. However, the Attorney General released an opinion . . . that cities and counties and fire protection districts may not adopt regulations or building standards related to fire and panic safety that are more stringent than those adopted by the SFM or contained in State Building Standards Codes. This bill is intended to *clarify existing law* to include fire and panic safety requirements among the regulations that cities [and] counties are authorized to modify." (Cal. Dept. of Finance, Analysis of Assem. Bill No. 2666 (1989-1990 Reg. Sess.) Aug. 8, 1990, italics added.)

The Building Association, on the other hand, relies primarily on material prepared by the Legislative Counsel. In an August 22, 1990, opinion, the Legislative Counsel concluded that if section 13143.5 became law, local governments "would not have authority, except as required by the California Building Standards Code, to mandate automatic fire sprinkler systems in residential dwellings within the jurisdiction of the [local government], except that a [local government] would have authority to mandate greater restrictions with respect to automatic fire sprinkler systems in high-rise structures . . . ." (Ops. Cal. Legis. Counsel, No. 18549 (Aug. 22, 1990) Fire Safety Building Standards: Local Ordinances, p. 2.) Although the opinion may be some evidence of legislative intent, as we explain below, it is simply wrong.

Following the Attorney General's lead, the Legislative Counsel concluded that section 17958 did not confer authority on local governments to modify building standards relating to fire and panic safety because those standards were not "adopted pursuant to Section 17922." (§ 17958; Ops. Cal. Legis. Counsel, No. 18549, *supra*, Fire Safety Building Standards: Local Ordinances, at pp. 5-9.) In a technical analysis, the Legislative Counsel reasoned

the State Fire Marshal's building standards were not adopted as "other rules and regulations" under section 17922: "[U]nder Sections 17921 and 17922, we think the Legislature has distinguished between the terms 'building standards' and 'rules and regulations.' Section 17921 requires the Department of Housing and Community Development to adopt 'other rules and regulations,' in addition to building standards, for the protection of public health and safety relating to structures, and requires the State Fire Marshal to adopt 'other rules and regulations,' in addition to building standards, for fire and panic safety in structures. Moreover, Section 17922 refers to 'building standards and rules and regulations.' It is a rule of statutory construction that any construction implying that words were used in vain or are surplusage is avoided [citations]. Therefore, we think the term 'other rules and regulations,' as used in Section 17922, does not include building standards . . . of the State Fire Marshal." (Ops. Cal. Legis. Counsel, No. 18549, *supra*, at p. 8.)

The problem with this analysis is that it ignores the definitions of "building standard" and "rules and regulations" contained in the State Housing Law. For the purpose of the State Housing Law, " 'Building standard' means any rule, regulation, order, or other requirement . . . which [regulates the materials or construction techniques in buildings]." (§ 18909, subd. (a); § 17920, subd. (c).) Additionally, section 18919 provides that " 'Regulation' includes building standards." Consequently, when section 17922 refers to "other rules and regulations" it is by definition referring to "building standards" adopted by the State Fire Marshal.

█ " '[O]ur first task in construing a statute is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. In determining such intent, a court must look first to the words of the statute themselves, giving to the language its usual, ordinary import . . . .' " (*Walnut Creek Manor* v. *Fair Employment & Housing Com.* (1991) 54 Cal.3d 245, 268 [284 Cal.Rptr. 718, 814 P.2d 704].) █ Here, the words of the statute clearly indicate that "other rules and regulations" include building standards adopted by the State Fire Marshal. Although it is true we should endeavor to avoid a statutory construction that renders some words mere surplusage (*Estate of MacDonald* (1990) 51 Cal.3d 262, 270 [272 Cal.Rptr. 153, 794 P.2d 911]), it is also true that ". . . when a word or phrase has been given a particular meaning in one part of a law, it is to be given the same meaning in other parts of the law." (*City of Sacramento* v. *State of California* (1984) 156 Cal.App.3d 182, 197 [203 Cal.Rptr. 258].) Indeed, ". . . unless the context *clearly requires otherwise*, we must assume that the meaning of a term or phrase is consistent throughout [an] entire act . . . ." (*Hayes* v.

*Commission on State Mandates* (1992) 11 Cal.App.4th 1564, 1595 [15 Cal.Rptr.2d 547], italics added.) Here, if we apply the meaning given to "rules and regulations" in the definitional part of the law, we necessarily conclude that "rules and regulations" include "building standards."

The Building Association also argues that if local governments already had authority to adopt more stringent fire and panic safety standards, then the Legislature's decision to enact section 13143.5 would have been an "idle act" and surplusage. Obviously, this is simply not true in light of the Attorney General's opinion denying that authority. The Legislature apparently believed section 13143.5 was necessary to counter the effect of that opinion.

Because of the conflicting legislative history on this point, we believe the Legislature did not expressly decide whether section 13143.5 was merely clarifying existing law or was a grant of new authority. Instead, the Legislature has left this ambiguity for the courts to resolve.

Section 13143.5, subdivision (b) specifically provides: "Nothing in this section shall authorize a local jurisdiction to mandate, *nor prohibit a local jurisdiction from mandating*, the installation of residential fire sprinkler systems within newly constructed dwelling units or in new additions to existing dwelling units . . . ." Section 13143.5, subdivision (a) by itself would have clearly delineated local governmental authority to mandate residential fire sprinkler systems in all dwellings notwithstanding the 1989 Attorney General's opinion. Had the Legislature enacted subdivision (a) without qualification, there would be no need to debate whether it was a new grant of authority or a clarification of existing law. However, when the Legislature added the seemingly contradictory subdivision (b), it said, in effect: this law neither authorizes a local government to mandate, nor prohibits a local government from mandating fire sprinklers in single-family residences. While the politics of including such language may be clear, the language itself is hopelessly unclear. Reduced to its essence, subdivision (b) means the new law neither grants nor withholds local authority to require sprinklers in single-family residences. If the new statute does nothing in this regard, earlier law governs. In other words, section 13143.5 does not affect a local jurisdiction's preexisting authority to mandate the installation of residential fire sprinkler systems. Had it chosen to do so, the Legislature could have easily clarified the scope of that authority. (See, e.g., § 13133, subd. (a) [prohibiting local governments from adopting ordinances relating to fire and panic safety in residential care facilities for the elderly that are inconsistent with state standards].) Instead, the Legislature remained silent; its silence compels the courts to define the scope of that authority.

This interpretation of the statute is completely consistent with the legislative history of the Green-Hansen Act. ■ "The legislative history of a statute, as well as the wider historical circumstances of its enactment, may be considered in ascertaining legislative intent." (*Watts* v. *Crawford* (1995) 10 Cal.4th 743, 753 [42 Cal.Rptr.2d 81, 896 P.2d 807]; see also *Walnut Creek Manor* v. *Fair Employment & Housing Com.*, *supra*, 54 Cal.3d at p. 268.) ■ The "wider historical circumstances" surrounding the Green-Hansen Act show that the Legislature was unwilling to directly address the issue of local authorities' power to require fire sprinklers in single-family residences.

As originally introduced on January 23, 1990, the bill containing section 13143.5 did not include any language concerning fire sprinklers. (Assem. Bill No. 2666 (1989-1990 Reg. Sess.) § 4.) On April 4, 1990, the Assembly amended section 13143.5 to provide that "[n]othing in this section shall authorize a local jurisdiction to *mandate* the installation of residential fire sprinkler systems" within new or existing dwelling units. (Assem. Amend. to Assem. Bill No. 2666 (1989-1990 Reg. Sess.) Apr. 4, 1990, italics added.) On June 7, 1990, the Assembly again amended section 13143.5, this time to provide that "[n]othing in this section shall authorize a local jurisdiction to mandate, *nor prohibit a local jurisdiction from mandating,* the installation of residential fire sprinkler systems" within new or existing dwelling units. (Assem. Amend. to Assem. Bill No 2666 (1989-1990 Reg. Sess.) § 3, June 7, 1990.)

The final language was born of a compromise between the building industry and local governments. (See Office of Local Government Affairs, Analysis of Assem. Bill No. 2666 (1989-1990 Reg. Sess.), March 15, 1990 [noting housing industry concern that original bill would "allow local agencies to require that fire sprinklers be installed in all new single family dwellings . . ." but that "author's office is negotiating language to alleviate their concerns"]; Assem. Ways and Means Com., Analysis of Assem. Bill No. 2666 (Republican Analysis) (1989-1990 Reg. Sess.) as amended June 7, 1990 [stating "[t]he author has sought to accommodate the diverse preferences of affected interests. [¶] This bill has come a long way"].)

The net effect of the final language was that the Legislature did not express a position one way or the other on the existing scope of a local government's power to require fire sprinkler systems in single-family residences. As the Assembly Committee on Local Government observed, the amendments to section 13143.5 clarified "that the fire sprinkler provisions of the bill do not authorize *or prohibit* fire sprinklers in new and existing

dwelling units (so that the bill is *neutral on this issue)."* (Assem. Com. on Local Government, Analysis of Proposed Amendments to Assem. Bill No. 2666 (1989-1990 Reg. Sess.), May 23, 1990, underlying in original, italics added.)

The Legislature had ample reason to refrain from taking a position on this issue. On the one hand, the building industry had clearly expressed its opposition to any provision that would permit local governments to require fire sprinklers in circumstances that were not already mandated by the state. On the other hand, at the time the Legislature was considering the Green-Hansen Act, 199 local jurisdictions already had sprinkler ordinances that were more restrictive than those in the Uniform Building Code or Uniform Fire Code. (Sen. Housing and Urban Affairs Com., Analysis of Sen. Bill No. 1830 (1989-1990 Reg. Sess.) as amended Apr. 5, 1990.) Thus, the Legislature was in a no-win situation: no matter what decision it made, it was likely to offend constituents. Its failure to speak clearly constrains us to apply former law.

As we have indicated, before 1990 cities and counties already had the power to modify building standards adopted by the State Fire Marshal if they expressly found the changes were necessary because of local climatic, geological, or topographical conditions. (§§ 17958, 17958.5, 17958.7; *ABS Institute* v. *City of Lancaster, supra,* 24 Cal.App.4th at p. 293.) This power included the power to require fire sprinkler systems in single-family residences. Consequently, since section 13143.5, subdivision (b) neither "authorize[s] a local jurisdiction to mandate, *nor prohibit[s] a local jurisdiction from mandating,* the installation of residential fire sprinkler systems" it follows that local authorities still have that power.[12]

---

[12]At oral argument, the City contended that we need not determine whether local governments have the power to modify building standards adopted by the State Fire Marshal, because, in this instance, both the State Fire Marshal and the Department of Housing "adopted" the subject regulations. Thus, the City argued the regulations relating to residential fire sprinkler systems were in fact "building standards adopted and submitted by the [Department of Housing] for approval" within the meaning of section 17922, subdivision (a).

However, in a request for judicial notice submitted after oral argument, the Building Association provided this court with materials which clearly show that in 1992 the Department of Housing did not adopt regulations relating to fire protection systems. In particular, the "Matrix Adoption Tables" for the 1991 Uniform Building Code shows that the Department of Housing did not adopt section 3802 of that code, which concerns automatic fire extinguishing systems. (1991 Cal. Building Code, p. 1122.)

Nevertheless, this fact is irrelevant to our opinion, as we have concluded that cities and counties had the authority to modify building standards even if the State Fire Marshal adopted them.

## III

### DISPOSITION

The judgment is affirmed. Costs to respondents.

Corrigan, Acting P. J., and McGuiness, J.,* concurred.

A petition for a rehearing was denied June 13, 1996, and appellant's petition for review by the Supreme Court was denied August 14, 1996. Kennard, J., was of the opinion that the petition should be granted.

---

*Judge of the Alameda Superior Court sitting under assignment by the Chairperson of the Judicial Council.