[No. A095016. First Dist., Div. Two. Apr. 12, 2002.]

CALIFORNIA APARTMENT ASSOCIATION et al., Plaintiffs and Appellants, v.
CITY OF FREMONT, Defendant and Respondent.

COUNSEL

Livingston & Mattesich and S. Craig Hunter for Plaintiffs and Appellants.

Harvey E. Levine, City Attorney, Michael Barrett, Deputy City Attorney; Richards, Watson & Gershon, Gary E. Gans and Janet E. Coleson for Defendant and Respondent.

OPINION

RUVOLO, J.—

## I.

### INTRODUCTION

Health and Safety Code section 17958[1] states that California's Building Standards Code (the State Code) becomes effective 180 days following publication of a new State Code, unless amended by local authorities. Appellants California Apartment Association and Rental Housing Owners of

---

[1] All undesignated statutory references are to the Health and Safety Code.

Southern Alameda (collectively CAA) brought suit against the City of Fremont (the City), claiming the City's fire sprinkler ordinances requiring automatic fire sprinklers in certain apartment buildings, which were adopted outside the 180-day period, were not timely adopted and, therefore, were void. The trial court sustained the City's demurrer after concluding that section 17958 does not preclude cities from making amendments, additions or deletions to the State Code more than 180 days after the publication of the new State Code. We agree and affirm.

## II.

### FACTS AND PROCEDURAL HISTORY

On June 22, 1999, the City adopted Ordinance Nos. 2344 and 2339 (the fire sprinkler ordinances), which require that apartment buildings of a certain size, having interior corridors particularly susceptible to rapidly spreading fire, be retrofitted with automatic fire sprinkler systems. In support of this local legislation, the City made findings that there are a number of apartment buildings in the City having center corridor-type structures. In these buildings, the ingress and egress of dwelling units are through the center hallway. In the event of a fire, the central hallway—the only means of escape—functions as a horizontal chimney, creating a dangerous condition known as "fire flash over." The "flash over" condition results from the accumulation of gases from the fire seeping into the hallway. The gases accumulate in the hallway ceiling area and ignite when the gas flash point temperature is reached. Therefore, residents cannot exit safely through the hallway, and residents in upper stories of a burning building may be forced to leap from windows and balconies in order to try to escape death or serious injury. The City concluded that automatic fire sprinkler systems installed in the hallways of central corridor structures can save lives and property by preventing "fire flash over" and by delaying the spread of fires.

In the underlying action, CAA challenged the validity of the fire sprinkler ordinances on numerous grounds, including that the ordinances: 1) were not timely adopted; 2) violated due process; 3) constituted an unconstitutional taking; 4) were unconstitutionally vague; and 5) violated equal protection. Because CAA eventually dismissed all of these causes of action, this appeal concerns only the second cause of action in CAA's complaint, which is denominated "preemption by state law as not timely adopted." This cause of action alleged that the sprinkler ordinances were not adopted within the 180-day time frame prescribed by state statute, and were, therefore, null and void.

By way of background, until the 1970's, every city and county in California adopted its own building code, unfettered by mandated state standards or

state control. In 1970, the Legislature put an end to this practice by declaring a statewide interest in uniform building codes and by otherwise expressing an intent to preempt the field of setting building code standards. (See generally *Briseno v. City of Santa Ana* (1992) 6 Cal.App.4th 1378, 1382-1383 [8 Cal.Rptr.2d 486].) Since then uniform statewide building standards have been generally specified by the Legislature. (See § 17922 [adoption of specific uniform building standards relating to construction dealing with everything from plumbing to fire safety incorporated into state law].) The State Code is a compilation of these building standards and is binding on the state and other public agencies, including private parties and entities. (See § 18944.5.) The State Code must be published in its entirety once in every three years, with supplements in other years as necessary. (See § 18942, subd. (a).) Once published, the State Code takes effect at the local level 180 days thereafter. (§ 17958.)

■ However, local entities, such as the City, are not absolutely precluded from enacting standards different from the standards set out in the State Code. As explained in *ABS Institute v. City of Lancaster* (1994) 24 Cal.App.4th 285 [29 Cal.Rptr.2d 224] (*ABS*), "There is a statewide interest in uniform building codes and the field has therefore been preempted by state law, subject to a statutory exception which permits a local entity to modify the provisions of the California Building Standards Code when it determines, and expressly finds, that such changes are reasonably necessary because of local climatic, geological or topographical conditions. [Citations.]" (*Id.* at p. 293.) (See § 18941.5, subd. (b).) Section 17958.5, permits such modifications where "reasonably necessary because of local climatic, geological, or topographical conditions," and section 17958.7, subdivision (a) requires an express finding that such conditions exist. In enacting the fire sprinkler ordinances, the City made express findings that more stringent fire protection measures were required because of local conditions, such as the City's proximity to the active Hayward earthquake fault, the high fire hazard exposure, and certain topographic features of the City.[2]

Section 17958, which sets out the 180-day time limit that is at the center of this controversy, reads as follows: "Except as provided in Sections 17958.8 and 17958.9, any city or county may make changes in the provisions adopted pursuant to Section 17922 and published in the California Building Standards Code or the other regulations thereafter adopted pursuant to Section 17922 to amend, add, or repeal ordinances or regulations which impose the same requirements as are contained in the provisions adopted

---

[2]Because CAA voluntarily dismissed all of its causes of action that challenged the validity of the fire sprinkler ordinance on substantive grounds, only the procedural aspects of the enactment of these ordinances remains for appellate resolution.

pursuant to Section 17922 and published in the California Building Standards Code or the other regulations adopted pursuant to Section 17922 or make changes or modifications in those requirements upon express findings pursuant to Sections 17958.5 and 17958.7. If any city or county does not amend, add, or repeal ordinances or regulations to impose those requirements or make changes or modifications in those requirements upon express findings, the provisions published in the California Building Standards Code or the other regulations promulgated pursuant to Section 17922 shall be applicable to it and shall become effective 180 days after publication by the California Building Standards Commission. Amendments, additions, and deletions to the California Building Standards Code adopted by a city or county pursuant to Section 17958.7, together with all applicable portions of the California Building Standards Code, shall become effective 180 days after publication of the California Building Standards Code by the California Building Standards Commission." (Added by Stats. 1984, ch. 908, § 3, p. 3031; amended by Stats. 1997, ch. 645 (Assem. Bill No. 1071), § 9.)

CAA's second cause of action questions the timeliness of the adoption of the sprinkler ordinances based on CAA's interpretation of the 180-day time frame set out in section 17958. CAA believes section 17958 absolutely fixes 180 days following the new State Code's publication as a period of limitations within which the City must have adopted its fire sprinkler ordinances. Since the official publication date of the new 1998 State Code was November 1998, the sprinkler ordinances, which were adopted by the City on June 22, 1999, were well outside the 180-day period prescribed by section 17958. As a consequence, CAA claimed the sprinkler ordinances were invalid and unenforceable.

The City filed a demurrer to CAA's second cause of action arguing that section 17958 simply says, that if a local governmental entity does not make modifications to the State Code within 180 days of its triennial publication date, the State Code becomes "effective" in that city 180 days after publication. Nothing in section 17958 states that cities *only* have the power to make modifications to the State Code within 180 days of publication and, if they fail to meet this narrow time frame, they must wait until the next publication date three years later in order to modify the State Code.

When this matter was orally argued below, the City pointed out that a 1979 amendment rewrote the previous version of section 17958, which had read: "The governing body of every city or county shall adopt ordinances or regulations imposing the same requirements as are contained in the regulations adopted pursuant to Section 17922 *within one year after November 23, 1970.* If any city or county does not adopt such ordinances or regulations, the

provisions of this part and the rules and regulations promulgated thereunder shall be applicable within one year after November 23, 1970." (Italics added.) City's counsel argued that the deletion of the "one-year" time requirement signaled a desire by the Legislature to eliminate the one-year window for city-sponsored amendments to the State Code which existed in the prior law: "If the Legislature had intended to change one year to 180 days, it easily could have done so. All it had to do was take that one sentence where it says 'shall have one year' and change one year to 180 days."

On February 27, 2001, the trial court sustained the City's demurrer to the second cause of action without leave to amend. CAA then voluntarily dismissed every cause of action in its complaint except its second cause of action. After judgment was entered for the City, this appeal followed. On December 10, 2001, this court granted CAA's motion for calendar preference.

## III.

### DISCUSSION

After issuing its tentative ruling sustaining the City's demurrer to CAA's second cause of action, the court explained the basis for its ruling: The City's "demurrer to the 2nd cause of action is sustained without leave to amend as Health and Safety Code § 17958 does not prevent local entities from modifying the California State Building Code after 180 days after the publication of the State Code. [Citations.]" CAA now appeals from the ensuing judgment, claiming the trial court's interpretation of section 17958 was incorrect.

In reviewing the trial court's ruling on demurrer, we exercise de novo review, as statutory interpretation is a question of law on which we are not bound by the trial court's analysis. (See, e.g., *International Engine Parts, Inc. v. Feddersen & Co.* (1995) 9 Cal.4th 606, 611-612 [38 Cal.Rptr.2d 150, 888 P.2d 1279]; *R & P Capital Resources, Inc. v. California State Lottery* (1995) 31 Cal.App.4th 1033, 1036 [37 Cal.Rptr.2d 436].) This appears to be a question of first impression.[3]

We start with the well-established rule of statutory construction that we are to ascertain the intent of the Legislature so as to effectuate the

---

[3]The trial court cited *ABS, supra,* 24 Cal.App.4th at page 293 in support of its ruling, but we find this case does not answer the precise question addressed in this appeal. The court in *ABS* found a city's failure to adopt findings within the 180-day period mentioned in section 17958 did not render invalid a city's ordinance prohibiting the use of a certain type of pipes in building construction. The state originally rejected the city's summary findings in support of the ordinance, but the city subsequently clarified its findings. The court in *ABS* held that nothing in section 17958 suggested that a delay in the effective date occasioned by the state's

purpose of the law. This is accomplished by turning first to the statutory language, giving effect to the ordinary meaning of the words employed. (*Robert F. Kennedy Medical Center v. Belshé* (1996) 13 Cal.4th 748, 756 [55 Cal.Rptr.2d 107, 919 P.2d 721].) " 'Where the words of the statute are clear, we may not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history.' " (*Ibid.*) In so doing, we consider matters such as " ' "the object in view, the evils to be remedied, the history of the times and of legislation upon the same subject, public policy, and contemporaneous construction." ' [Citations.]" (*San Diego Union v. City Council* (1983) 146 Cal.App.3d 947, 954 [196 Cal.Rptr. 45].) In testing a proposed interpretation we must also consult the text of associated and related statutes, attempting to identify the role of each in the larger system of laws. "[E]very statute should be construed with reference to all other statutes of similar subject so that each part of the law as a whole may be harmonized and given effect. [Citation.]" (*Franchise Tax Bd. v. Superior Court* (1998) 63 Cal.App.4th 794, 799 [73 Cal.Rptr.2d 889].)

■ Section 17958 begins by reciting the right of local governments to make changes in the State Code in the manner provided in sections 17958.5 and 17958.7. It reads, in pertinent part, "any city or county may make changes in the provisions adopted pursuant to Section 17922 and published in the California Building Standards Code or the other regulations thereafter adopted pursuant to Section 17922 to amend, add, or repeal ordinances or regulations which impose the same requirements as are contained in the provisions adopted pursuant to Section 17922 and published in the California Building Standards Code or the other regulations adopted pursuant to Section 17922 or make changes or modifications in those requirements upon express findings pursuant to Sections 17958.5 and 17958.7."

Sections 17958.5 and 17958.7, which specify the local conditions that must exist and the findings that must be made before modifications to the State Code may be made, neither bar changes more than 180 days after publication of the State Code; nor do they refer to any limit at all on the amendment power reserved to municipalities.

Section 17958 then goes on to provide that, "[i]f any city or county does not amend, add, or repeal ordinances or regulations to impose those requirements or make changes or modifications in those requirements upon express findings, the provisions published in the California Building Standards Code or the other regulations promulgated pursuant to Section 17922 shall be

request for additional information somehow affected an otherwise timely modification. In contrast, in our case, we examine whether a modification taking place outside the 180-day time frame is timely.

applicable to it and shall become effective 180 days after publication by the California Building Standards Commission. . . ."

Because the State Code must be published in its entirety once every three years, with supplements in other years as necessary (see § 18942, subd. (a)), we believe the Legislature added the 180-day time frame to section 17958 simply so there would be a date certain when all cities would be covered by new versions of the State Code. This effective date was set, by operation of law, to be 180 days from the publication of the State Code. The statute simply says that if a city does not make changes to the State Code within 180 days, the provisions of the State Code become "effective" by default.

Thus, the Legislature's choice of words seems to us a natural product of the drafting process, reflecting only a desire to establish a definite point in time all cities would be covered by the new State Code—not a desire to freeze the law at a particular point in time and restrict cities from making necessary changes thereafter. We believe this interpretation of the statute's language is the most reasonable one. Our conclusion is supported by the inference properly drawn by the City from the Legislature's 1979 amendment that eliminated what was clearly a one-year limitations period in favor of the current language.

This interpretation is also in harmony with the well-established policy of construing a statute to promote the ends sought by the Legislature and to provide a construction that will not nullify the statute's purpose. The overriding statutory purpose in permitting a local entity to modify the provisions of the State Code when it determines, and expressly finds, that such changes are reasonably necessary because of local conditions is to allow local entities the flexibility necessary to "do something different than is required or permitted for the rest of the state." (*ABS, supra,* 24 Cal.App.4th at p. 294.) This flexibility becomes imperative when a local entity determines that conditions exist within its geographical boundaries which create an unreasonable hazard to life or property.

The exigencies justifying the need for such flexibility is exemplified by the case of *Building Industry Assn. v. City of Livermore* (1996) 45 Cal.App.4th 719 [52 Cal.Rptr.2d 902] (*Building Industry Assn.*). There the court determined a city acted within its authority under sections 17958, 17958.5 and 17958.7 in enacting an ordinance in 1992 requiring builders to install residential fire sprinkler systems in new residential dwellings, a year following publication of the 1991 State Uniform Building Code (the predecessor to the State Code). (*Building Industry Assn.,* at pp. 722, 724.) In support of this ordinance, the city council made an express finding that

modified standards for automatic fire-extinguishing systems were necessary because of local conditions, which included the fact that dry, hot, windy summers had led to grass and brush fires in the grassland surrounding the city and that these conditions greatly increased the fire risk to residences in grassland areas. (*Id.* at p. 727.) The city also found that it had an unusual number of topographical features that hinder fire suppression services, that the city is near several earthquake faults, and that a major seismic event would create a demand for fire suppression services that the city fire department could not meet. (*Id.* at pp. 727-728.)

While *Building Industry Assn.* did not address the timeliness of the ordinance involved in that case, it is illustrative of the fact that technical information important to public safety may come to the attention of city officials at any time, including well after the effective date of the State Codes. Under CAA's interpretation of section 17958, a local government would be precluded from enacting standards different from state standards if it fails to meet the narrow 180-day time frame set out in section 17958, even if the safety and health of its citizens were thereby placed in jeopardy. It appears profoundly implausible that the Legislature intended such a result.

Yet CAA posits its own theory: "The rationale for a 180-day time limitation on local government changes to the State Codes also is readily apparent: it is certainty. Homeowners, architects, and builders need to know the rules for new construction and need to be able to rely upon them. The clear legislative construct for the State Codes is that, when new State Codes are adopted, they are the law for three years. By statute, local entities may alter the State Code, under specified conditions. However, local entities only have the first 180 days of that three-year period in which to do so. After that 180-day adoption period expires, homeowners, architects, and builders may be assured that, if they purchase property, borrow money, and design and construct an improvement which complies with the State Codes, a local government may not thereafter be able to change the rules."

But CAA omits to mention that homeowners, architects, and builders are already legislatively protected from changing regulatory requirements. Subject to very limited exceptions, local agencies may not impose new or modified building requirements that are different from those specified in the plans and specifications approved during the plan checking. Building standards that are effective when the application for a building permit is submitted apply to the plans and specifications and to the construction performed under that building permit. (§§ 18938.5, 19870, subd. (a).)

Last, CAA directs us to focus on the legislative history of section 17958, which CAA submitted to the trial court. Some of the proffered material, such

as a letter from a former legislative member, was correctly ruled by the trial court to be inadmissible and of no weight on the question of legislative intent. (See *California Teachers Assn. v. San Diego Community College Dist.* (1981) 28 Cal.3d 692, 700 [170 Cal.Rptr. 817, 621 P.2d 856].) Other available material, such as legislative committee bill analyses, does not support CAA's position that section 17958 absolutely prohibits local entities from making any modifications to the State Code more than 180 days after its publication. There is no evidence in the legislative material submitted by CAA that the Legislature entertained any such understanding or purpose. In fact, the language of the statute and the legislative history merely say the same thing—that if a local entity does not enact any modifications to the State Code within 180 days of publication, the State Code becomes effective in that city.

We therefore follow the plain language of section 17958, while still promoting the Legislative intent underlying the statutory scheme. "While it is true '[c]ourts may, of course, disregard even plain language which leads to absurd results or contravenes clear evidence of a contrary legislative intent' [citation], neither situation obtains here. 'The statute, in short, may be read to mean precisely what it says.' (*Ibid.*)" (*Heater v. Southwood Psychiatric Center* (1996) 42 Cal.App.4th 1068, 1085 [49 Cal.Rptr.2d 880].)

## IV.

### DISPOSITION

The judgment is affirmed.

Kline, P. J., and Haerle, J., concurred.