Filed 6/27/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| PAULO MORGADO,<br><br>       Plaintiff and Respondent,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO et al.,<br><br>       Defendants and Appellants. | A141681<br><br>(San Francisco City & County<br>Super. Ct. No. CGC 12–518287) |

Government Code[1] section 3304, subdivision (b), which is part of the Public Safety Officers Procedural Bill of Rights Act (PSOPBRA) (§ 3300 et seq.), provides that "[n]o punitive action . . . shall be undertaken by any public agency against any public safety officer . . . without providing the public safety officer with an opportunity for administrative appeal."

In this appeal, the City and County of San Francisco (City) seeks review of the trial court's order granting injunctive relief to Paulo Morgado (Morgado), a non-probationary City police officer whose employment was terminated following misconduct findings. The City argues the court erred in finding the City's procedure for disciplining police officers violates section 3304, subdivision (b).

We disagree and will affirm.

## I. BACKGROUND

On or about March 1, 2008, a citizen with whom Morgado interacted filed a complaint against him with the Office of Citizen Complaints (OCC) of the City's Police

---

[1] All undesignated statutory references are to the Government Code.

Department.[2]  Pursuant to its powers granted by the City Charter (see S.F. Charter, § 4.127), the OCC investigated the alleged misconduct and shared its findings and disciplinary recommendations with the chief of police (Chief).  After further investigation by the department's internal affairs division, the Chief filed a disciplinary complaint with the City's Police Commission (Commission) against Morgado in August 2009.[3]

The Commission assigned one of its seven members to investigate the complaint, first on August 28, 2009, and then, after that commissioner stepped down, another on June 8, 2010.  That commissioner held a full evidentiary hearing on August 2 and 3, 2010, in which Morgado participated.  Later, on March 30, 2011, Morgado, represented by counsel, participated in a hearing before the full Commission, at the conclusion of which the Commission sustained four of the six counts against him and decided to terminate his employment.

Dissatisfied with the Commission's decision, on February 16, 2012, Morgado sued the City, the OCC, the Chief, and the Commission, seeking injunctive relief and a writ of administrative mandate to direct the defendants to reinstate him.  Responding to a discovery request by Morgado, the City "admit[ted]," as a factual matter, the "only punitive action undertaken against him" was the Commission's decision "to terminate [his] employment."  The City further "admit[ted]," as a factual matter, it did not provide Morgado with an "administrative appeal" from the Commission's decision to terminate his employment.  After the trial court denied the City's motion for summary judgment in October 2013, the case proceeded to a bench trial.

The court issued a written statement of decision and entered judgment in favor of Morgado on February 26, 2014.  Relying on sections 3304, subdivision (b) (requiring "an opportunity for administrative appeal") and 3309.5, subdivision (d)(1) (giving the trial

---

[2] The OCC is now the Department of Police Accountability.  (See S.F. Prop. G, adopted Nov. 8, 2016, adding S.F. Charter, § 4.136 and amending *id.*, § 4.127.)

[3] Pursuant to section A8.343 of the Appendix to the City Charter, the Chief can impose a disciplinary suspension up to 10 days (from which the officer may appeal to the Commission) or file a complaint with the Commission for harsher sanctions.

2

court discretion to grant injunctive relief), and pertinent case law, the court issued an order (1) enjoining the Commission "from taking any punitive action against Morgado pursuant to the complaint . . . unless the Officer has first been provided an opportunity for administrative appeal from that action," (2) vacating his termination, and (3) directing the City to provide him an "opportunity for administrative appeal" from the Commission's decision to terminate his employment. The court specifically noted it was "not changing any other findings made by the Police Commission."

The City filed a timely notice of appeal.

## II. DISCUSSION

### A. Standard of Review

We review questions of statutory interpretation de novo. (See *California Apartment Assn. v. City of Fremont* (2002) 97 Cal.App.4th 693, 699.) The rules of statutory construction are well-settled: "we are to ascertain the intent of the Legislature so as to effectuate the purpose of the law," first by looking to the plain text, "giving effect to the ordinary meaning of the words employed," and considering the language within the context of the entire statutory scheme. (*Id.* at pp. 699–700.) In construing the statutory language, "we consider matters such as ' " 'the object in view, the evils to be remedied, the history of the times and of legislation upon the same subject, public policy, and contemporaneous construction.' " ' " (*Id.* at p. 700.)

At the heart of this appeal is whether a "punitive action" was taken against Morgado, and if so, when that action took place. The City admitted during discovery that the "first and only 'punitive action' " here was the Commission's decision to terminate Morgado's employment. We view this issue as a mixed question of fact and law. (See *Crocker National Bank v. City & County of San Francisco* (1989) 49 Cal.3d 881, 888 ["Mixed questions of law and fact concern the application of the rule to the facts and the consequent determination whether the rule is satisfied. If the pertinent inquiry requires application of experience with human affairs, the question is predominantly factual and its determination is reviewed under the substantial-evidence test. If, by contrast, *the inquiry requires a critical consideration, in a factual context, of legal principles and their*

3

*underlying values, the question is predominantly legal and its determination is reviewed independently.*" (Italics added.)]; cf. *Turturici v. City of Redwood City* (1987) 190 Cal.App.3d 1447, 1449–1450 [applying, in effect, de novo review to determine whether disputed action constitutes "punitive action" for purposes of the PSOPBRA].) Any admissions made by the City on the question are not binding on us, since we must make our own independent determination in the course of our de novo review.

### B. The PSOPBRA "Administrative Appeal" Requirement

Four decades ago, the Legislature enacted the PSOPBRA " 'to maintain stable employer-employee relations and thereby assure effective law enforcement.' " (*Pasadena Police Officers Assn. v. City of Pasadena* (1990) 51 Cal.3d 564, 572.) "The Act requires that law enforcement agencies throughout the state afford minimum procedural rights to their peace officer employees." (*Ibid.*, fn. omitted; accord, *Baggett v. Gates* (1982) 32 Cal.3d 128, 135 (*Baggett*); *Quezeda v. City of Los Angeles* (2014) 222 Cal.App.4th 993, 1003; see also § 3301 [declaring legislative findings to the same effect].) A public agency may, of course, provide police officers more than what is required in the statute, so long as, at "a minimum[,] [the agency] provides to [them] the same rights or protections as provided pursuant to [the PSOPBRA] . . . with regard to such a procedure." (§ 3310; see also *Runyan v. Ellis* (1995) 40 Cal.App.4th 961, 967.)

Subdivision (b) of section 3304 provides, in relevant part, that "[n]o punitive action . . . shall be undertaken by any public agency against any public safety officer . . . without providing the public safety officer with an opportunity for administrative appeal." Section 3304.5 further provides that "[a]n administrative appeal instituted by a public safety officer under [the PSOPBRA] shall be conducted in conformance with the rules and procedures adopted by the local public agency." Section 3303, in turn, defines "punitive action" as "any action that may lead to dismissal, demotion, suspension, reduction in salary, written reprimand, or transfer for purposes of punishment."

The purpose of the administrative appeal requirement is "to ensure a peace officer subjected to punitive action has the 'opportunity "to establish a formal record of the circumstance surrounding his termination" [citation] and "to attempt to convince the

4

employing agency to *reverse its decision*, either by demonstrating the falsity of charges which led to punitive action, or through proof of mitigating circumstances." ' " (*San Diego Police Officers Assn. v. City of San Diego Civil Service Com.* (2002) 104 Cal.App.4th 275, 280, italics added.) Section 3304 "does not specify how the appeal process is to be implemented"; instead, "[t]he details of administrative appeal under section 3304, subdivision (b) are left to be formulated by the local agency." (*Binkley v. City of Long Beach* (1993) 16 Cal.App.4th 1795, 1806.) But courts have concluded that, "[a]t minimum, section 3304 requires that a peace officer receive an evidentiary hearing before a neutral fact finder to challenge the punitive action." (*Gordon v. Horsley* (2001) 86 Cal. App. 4th 336, 347; accord, *Giuffre v. Sparks* (1999) 76 Cal.App.4th 1322, 1329.)

The City argues the proceedings against Morgado complied with the "letter and the intent" of the "administrative appeal" requirement under section 3304, subdivision (b), because "the Commission proceeding *is* the appeal that [PSOPBRA] requires the City to make available before 'undertaking' the disciplinary action sought by the Chief and/or the OCC." (Italics added.) And, the City argues, the first "punitive action" was not, as the trial court found, the Commission's decision to terminate Morgado's employment, but rather was "the Chief's complaint." Morgado and amicus curiae, the San Francisco Police Officers Association, disagree, arguing the City failed to provide an "administrative appeal from the first and only punitive action taken against him, i.e., the Commission's termination decision."

As noted, the City takes the position that the Chief's complaint to the Commission constituted a "punitive action" under section 3304, subdivision (b), and that, as a result, the Commission's proceedings constituted an "appeal" from that "punitive action." We agree with the City that an action by an officer's employer that may lead to future discipline may be considered a "punitive action" within the meaning of section 3304, subdivision (b). Section 3303 provides that "punitive action means any action that *may lead* to dismissal, demotion, suspension, reduction in salary, written reprimand, or transfer for purposes of punishment." (Italics added.) Accordingly, a punitive action triggering an officer's administrative appeal rights may exist when "action is taken which

5

*may* lead to the adverse consequences specified in section 3303 at some *future time*."
(*Otto v. Los Angeles Unified School Dist.* (2001) 89 Cal.App.4th 985, 996.) For example, written documentation that criticizes an officer's conduct or warns that such conduct will lead to future disciplinary action may constitute a punitive action. (E.g., *id.* at p. 998 [warning that continued misconduct could lead to future disciplinary action]; *Caloca v. County of San Diego* (1999) 72 Cal.App.4th 1209, 1222–1223 [written report sustaining findings of misconduct]; see *Los Angeles Police Protective League v. City of Los Angeles* (2014) 232 Cal.App.4th 136, 145–146.)

We have no quarrel with the general proposition that, when an action taken by an officer's employer is not one of the sanctions listed in section 3303 but "may lead" in the future to one of the consequences specified in that statute, that action is a punitive action triggering an officer's right to an administrative appeal under section 3304, subdivision (b). But in our view, it does not necessarily follow that, where an *interim step* in a disciplinary proceeding against an officer (such as a recommendation that further proceedings be conducted) "may lead" to discipline at the end of that proceeding, a public entity satisfies section 3304, subdivision (b) by permitting the officer to administratively challenge only the interim step and providing him or her no opportunity to challenge the discipline that is ultimately imposed.

Thus, although we agree with the City that an action portending future discipline may constitute a punitive action triggering an officer's appeal rights, we do not agree with its conclusion that therefore an officer need not be given an opportunity to administratively appeal a subsequent decision to impose discipline (reached here by the Commission). Even if the Chief's complaint constituted a "punitive action," Morgado's termination was itself a "punitive action" under the statute, from which he has the right to "an opportunity for administrative appeal." (§ 3304, subd. (b); see § 3303; *Gordon v. Horsley, supra,* 86 Cal.App.4th at p. 347 [" '[D]ismissal*, demotion, suspension, reduction in salary or written reprimand are considered *per se punitive*, without regard to the motivations for those actions.' " (Italics added.)]; *San Diego Police Officers Assn. v. City of San Diego Civil Service Com., supra,* 104 Cal.App.4th at p. 280 ["The Legislature

6

enacted this code section to ensure a peace officer subjected to punitive action has 'the opportunity "to establish a formal record of the circumstance surrounding his termination" [citation] and "to attempt to convince the employing agency to *reverse its decision*, either by demonstrating the falsity of charges which led to punitive action, or through proof of mitigating circumstances." ' " (Italics added.)].)  Here, Morgado had no opportunity to attempt to convince the City to reverse its decision to terminate him, because no further administrative proceedings occurred after the Commission made that decision.[4]

An interpretation of the term "administrative appeal" that permits an officer to challenge the decision to discipline him (rather than permitting him to challenge only a complaint or recommendation made earlier in the disciplinary process, while denying him the right to challenge the actual decision) also is consistent with a conventional understanding of an "administrative appeal."  (See *Doyle, supra,* 117 Cal.App.3d at p. 679 ["It is generally accepted that an administrative appeal provides for an independent re-examination of an order or decision made.  [Citations.]  Similarly, an administrative appeal may also be taken from notice of a decision or order prior to its actual date of implementation in certain situations.  [Citation.]  Obviously, a decision to terminate an officer's employment, whether implemented yet or not, constitutes punitive action."].)

In support of its argument that the Commission's proceedings constitute an "opportunity for administrative appeal" (even though they preceded the decision to terminate Morgado), the City cites *Mays v. City of Los Angeles* (2008) 43 Cal.4th 313 (*Mays*), and *Crupi v. City of Los Angeles* (1990) 219 Cal.App.3d 1111 (*Crupi*).

---

[4] In *Doyle v. City of Chino* (1981) 117 Cal.App.3d 673, 679–681 (*Doyle*), the appellate court rejected a police chief's contention that he was entitled to an appeal *before* any decision to discipline him had been reached.  The appellate court held the right to appeal does not arise until a decision to impose discipline is made.  (*Id.* at pp. 679–680.)  In *White v. County of Sacramento* (1982) 31 Cal.3d 676, 684, fn. 6, the Supreme Court noted the *Doyle* court's holding, but did not address (because the parties in *White* had not raised it) "the question of the 'timing' of the 'opportunity for administrative appeal' provided by section 3304, subdivision (b)."

7

*Mays* was an appeal following the issuance of a letter of reprimand to a Los Angeles police officer by the chief of police and an administrative appeal from that reprimand initiated by the officer. (*Mays*, *supra*, 43 Cal.4th at pp. 318–319.) The issue on appeal in the *Mays* action was whether section 3304, subdivision (d) requires a public employer to give notice of the specific proposed punishment for the charged misconduct to be within the PSOPBRA statute of limitations. The California Supreme Court held that it did not.[5] (*Mays*, *supra*, at pp. 321–322, 325.) In so holding, the Supreme Court discussed the "opportunity for administrative appeal" requirement of section 3304, subdivision (b), but only to illustrate that, from a timing standpoint, the review mechanism a city provides—which the Court observed may be provided "locally," such as by collective bargaining agreement—does not dictate that the statute of limitations period must run from the notice of some specific form of discipline. (*Mays*, *supra*, 43 Cal.4th at p. 323 ["There is no indication in the statute that the local mechanism cannot provide for a determination of the precise discipline at a hearing occurring subsequent to the notification envisioned by section 3304(d)."].) *Mays* does not address the question before us, which is whether a particular disciplinary procedure complies with section 3304, subdivision (b).

Nor does *Crupi* support the City's position here. In that case, an officer-involved shooting was referred to the Los Angeles Police Department's use of force review board and the officer-involved shooting section of the department's robbery/homicide division. Utilizing a report by the robbery/homicide division, the use of force review board classified the shooting as being " 'out of policy' " and recommended "administrative disapproval." (*Crupi*, *supra*, 219 Cal.App.3d at p. 1114 & fn. 2.) The Los Angeles Chief of Police subsequently adopted the use of force review board report and submitted his findings to the police commission. The officer was notified that the proposed disposition

---

[5] The current version of section 3304, subdivision (d), which was amended after the *Mays* decision, does require notice of the proposed discipline. (§ 3304, subd. (d)(1); see *Neves v. California Dept. of Corrections & Rehabilitation* (2012) 203 Cal.App.4th 61, 68, fn. 3 [discussing the change].)

was for "the charges to be sustained and the matter adjudicated by a board of rights" and was, at that point, provided copies of the use of force report, the formal findings of the chief of police which had been provided to the police commission, and the robbery/homicide division report. (*Id*. at p. 1115.) The officer was suspended without pay pending the board of rights hearing. (*Ibid.*) Before a board of rights hearing commenced, however, the officer filed a lawsuit which formed the basis of the *Crupi* appeal. (*Id.* at pp. 1115–1116.) The officer claimed in part that " '[t]he police chief, in adopting the findings of the Review Board, generated a report to the Police Commission which was not released to [him], thus depriving him of an administrative appeal.' " (*Id.* at p. 1120.) In rejecting that argument, the *Crupi* court appeared to assume the Chief's adoption of the review board's findings constituted a punitive action triggering a right of appeal, but was not called upon to address that question. (*Id.* at pp. 1120–1121.) The *Crupi* court held the board of rights review process provided the officer "an administrative appeal through which he could attack the accuracy of the subject report" that included adverse findings about his actions. (*Id.* at p. 1120.)

The City's reading of both *Mays* and *Crupi* is that those courts implicitly recognized that any adjudication following an officer's first exposure to punitive action in an investigation may be deemed an appeal. The premise of this interpretation, however—which is the flaw running throughout its argument here—is its failure to recognize there may be multiple steps in a disciplinary process that amount to "punitive actions" triggering the right to appeal. As we have discussed, the final step here, the Commission's decision to terminate Morgado, was such an action. Neither *Mays* nor *Crupi* holds that, because a municipality provides an appeal from punitive actions taken early in the disciplinary process, the municipality is excused from providing an appeal from a later punitive action (here, the ultimate sanction of dismissal).[6] The City reads far more into these two cases than their holdings will bear.

---

[6] We do not hold a municipality *must* provide multiple administrative appeals during a single disciplinary proceeding against an officer. We hold only that the provision of a hearing that could be considered an administrative appeal, in the middle of

9

At oral argument, counsel for the City argued the decision in *Holcomb v. City of Los Angeles* (1989) 210 Cal.App.3d 1560 (*Holcomb*) supports its position that the Commission proceeding satisfies the "opportunity for administrative appeal" requirement in section 3304, subdivision (b). In *Holcomb*, the Los Angeles Chief of Police suspended the officer for five days, and the officer requested a hearing before a board of rights. (*Holcomb, supra,* 210 Cal.App.3d at p. 1562.) After a hearing, the board of rights determined the officer's punishment should instead be a longer, 15-day suspension; the chief adopted the Board's recommendation and imposed the longer suspension. (*Id.* at p. 1564.) The officer sought review in the trial court, arguing the lengthened suspension was an illegal attempt to punish him for seeking administrative review of the initial disciplinary decision. (*Ibid.*) The trial court agreed that the increased punishment violated due process, but the appellate court reversed. (*Id.* at pp. 1564, 1569.)

The appellate court in *Holcomb* noted that the Los Angeles City Charter expressly authorized the board of rights to recommend a more serious punishment than the one originally imposed. (*Holcomb, supra,* 210 Cal.App.3d at p. 1566.) The officer thus "was on notice the Board of Rights hearing could possibly result in a greater punishment depending upon the Board's evaluation of the seriousness of the offense and his personnel record." (*Ibid.*) The appellate court then held this charter provision did not violate *section 3304, subdivision (a)*, a provision of the PSOPBRA that prohibits punishment of officers for exercising their administrative rights.[7] (*Holcomb, supra,* 210 Cal.App.3d at pp. 1566–1568.) In the course of analyzing this question, the *Holcomb* court first determined the PSOPBRA applied to the situation before it, concluding that (1) the initial five-day suspension was a punitive action within the meaning of the

the disciplinary proceeding, does not excuse the municipality from providing the officer an opportunity to administratively appeal the ultimate disciplinary decision at the end of it.

[7] Section 3304, subdivision (a) provides in part: "No public safety officer shall be subjected to punitive action, or denied promotion, or be threatened with any such treatment, because of the lawful exercise of the rights granted under this chapter, or the exercise of any rights under any existing administrative grievance procedure."

PSOPBRA, and (2) since requesting a board of rights hearing was "the only process available to [the officer] at that juncture to challenge the discipline," that hearing "was, within the context of this case, the required administrative appeal." (*Holcomb, supra,* 210 Cal.App.3d at p. 1567.) The appellate court then concluded that the subsequent imposition of a longer suspension did not violate section 3304, subdivision (a), because there was no evidence the longer suspension was imposed in retaliation for the officer's decision to pursue an administrative appeal of the five-day suspension; instead, the recommendation of a longer suspension was based on evidence developed at the board of rights hearing. (*Id.* at pp. 1567–1568; accord, *Jackson v. City of Los Angeles* (1999) 69 Cal.App.4th 769, 782–783 [once officer initiated administrative appeal before board of rights, and the board had been constituted and convened, he could not withdraw appeal to avoid imposition of more severe discipline than the sanction originally imposed].)

We are not persuaded that *Holcomb* brings the City's procedure at issue here into compliance with the administrative appeal requirement in section 3304, subdivision (b). As noted, the *Holcomb* court concluded a hearing that *follows* the imposition of some level of punishment but could result in a *change* in the originally-imposed punishment constituted an administrative appeal, and the increased punishment did not violate *section 3304, subdivision (a)*'s prohibition on retaliation. Assuming that is correct, *Holcomb* did not address whether the administrative appeal requirement of *section 3304, subdivision (b)* is satisfied by a hearing that *precedes* the employer's selection or imposition of any specific disciplinary sanction. For the reasons discussed above, we conclude the City's procedure, in which the Commission hearing precedes any such decision by the City as to which punishment to impose, does not satisfy the administrative appeal requirement, because there is no opportunity for the officer to convince the employer to reverse the decision.

The City acknowledges it did not provide Morgado an "opportunity for administrative appeal" from the Commission's decision to terminate him, effectively conceding this point. We therefore conclude a "punitive action [i.e., the Commission's termination decision] . . . [was] undertaken by [the City] against [Morgado] . . . without

11

providing [him] with an opportunity for administrative appeal." (§ 3304, subd. (b).) Because the City deprived Morgado of the process he was due by statute, we must affirm the trial court's judgment and directive that the City comply with section 3304, subdivision (b) by now providing Morgado "an opportunity for administrative appeal." (See *ibid.*)

We do not hold, however, that the City must provide Morgado a second evidentiary hearing akin to the Commission proceeding, or that such a hearing must occur before a body that is separate from the Commission. We acknowledge courts have concluded that an administrative appeal under the PSOPBRA must involve " 'an "*independent re-examination*" ' of an order or decision made," that "the reexamination must be conducted by someone who has not been involved in the initial determination," and that the independent decision maker must make factual findings that can be reviewed by the courts. (*Caloca v. County of San Diego* (2002) 102 Cal.App.4th 433, 443–444; see *Gordon v. Horsley, supra,* 86 Cal.App.4th at p. 347 [officer must be afforded "an evidentiary hearing before a neutral fact finder to challenge the punitive action"].) And as noted, courts have held that the purpose of section 3304, subdivision (b) is to afford an officer the opportunity " ' "to establish a formal record of the circumstance surrounding his termination," ' " and " ' "to attempt to convince the employing agency to reverse its decision, either by demonstrating the falsity of charges which led to punitive action, or through proof of mitigating circumstances." ' " (*San Diego Police Officers Assn. v. City of San Diego Civil Service Com., supra,* 104 Cal.App.4th at p. 280.)

The Commission proceeding fulfills some of these purposes and requirements. It provides an opportunity for an officer to develop a formal record of the underlying events and other circumstances surrounding the City's disciplinary decision, and the proceeding is an evidentiary hearing before a neutral fact finder, i.e., the Commission is not "the individual or agency that has initiated punitive action against a peace officer" (see *Caloca v. County of San Diego, supra,* 102 Cal.App.4th at p. 444). Morgado does not contend otherwise. Where the Commission proceeding used in Morgado's case fell short, in our view, is that it did not provide an opportunity for the officer to convince the City to

12

"reverse" its decision to terminate him, because the proceedings ended as soon as that decision was made. To satisfy the "opportunity for administrative appeal" requirement, the City must incorporate this element into its disciplinary procedure. Since no such procedure is before us in this appeal, we cannot and do not address whether any specific procedure complies with the statute.[8]

### C. The City's "Home Rule" Argument

The City next advances what it styles a "home rule" argument, viz., that the requirement it provide an opportunity for administrative appeal could present potential questions of a conflict between article XI, section 5 of the California Constitution and section 3304, subdivision (b). The City notes the constitutional provision grants charter cities the authority to regulate their police forces and "plenary authority" to provide in their charters for the "compensation, method of appointment, qualifications, tenure of office and removal" of their employees. (Cal. Const., art. XI, § 5, subd. (b)(1), (4).) The

---

[8] In support of the argument that its procedures comply already with section 3304, subdivision (b), the City requests that we take judicial notice of (1) provisions of the Los Angeles City Charter setting forth procedures that are purportedly comparable to the City's procedures, and (2) a written statement submitted by the Los Angeles Police Protective League in 1975 to the California Senate Judiciary Committee in support of legislation providing procedural protections for police officers. We deferred action on this request until resolution of the merits of the appeal, and now grant it in part and deny it in part.

We grant the request as to the submitted provisions of the Los Angeles City Charter. (See Evid. Code, § 451, subd. (a) [court must take judicial notice of provisions of charter described in Cal. Const., art. XI, §§ 3, 4 or 5, i.e., county and city charters]; Evid. Code, § 459, subd. (a).) As discussed in the text, however, we find distinguishable the cases cited by the City that arose from disciplinary proceedings in Los Angeles.

We deny the request for judicial notice as to the 1975 statement by the Los Angeles Police Protective League, which the City argues is subject to discretionary notice because it is part of the PSOPBRA's legislative history and is relevant in assessing the general purposes of the PSOPBRA. Barring exceptional circumstances, we will not exercise discretion to take notice of evidence not submitted to the trial court (see *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3); in any event, the submitted statement is not helpful to our analysis, which is based on the language of the PSOPBRA's provisions and case law construing those provisions and the relevant statutory purposes.

City argues this court should construe the PSOPBRA in a manner that will avoid any conflict with the City's charter provisions concerning the discipline of police officers. The City also contends "the [administrative appeal] requirement is not reasonably related and narrowly tailored to achieve its purpose because [the City's] existing disciplinary procedures afford protections that already exceed [the PSOPBRA's] minimum mandates."

Our Supreme Court has explained that, when there is an " 'actual conflict' " between a state statute and a charter city's enactment, and the "local matter under review 'implicates a "municipal affair," ' " the court must determine whether (1) " 'the subject of the state statute is one of statewide concern,' " and (2) " 'the statute is reasonably related [and "narrowly tailored"] to its resolution.' " (*Johnson v. Bradley* (1992) 4 Cal.4th 389, 399 (*Johnson*), fn. omitted, quoting *California Fed. Savings & Loan Assn. v. City of Los Angeles* (1991) 54 Cal.3d 1, 16–17 (*CalFed*).)  If these requirements are met, " 'then the conflicting charter city measure ceases to be a "municipal affair" pro tanto and the Legislature is not prohibited by article XI, section 5 [, subdivision] (a) [of the state Constitution], from addressing the statewide dimension by its own tailored enactments.' " (*Johnson, supra,* 4 Cal.4th at p. 399, quoting *CalFed*, *supra*, 54 Cal.3d at p. 17.)

The latter two conditions are established here by controlling precedent.  As the City acknowledges, our Supreme Court expressly held in *Baggett* that the PSOPBRA addresses a matter of statewide concern, i.e., the "maintenance of stable employment relations between police officers and their employers." (*Baggett*, *supra*, 32 Cal.3d at pp. 139–140.)  *Baggett* further establishes the PSOPBRA is reasonably related and narrowly tailored to achieve this purpose.  The Supreme Court held in *Baggett* that "there is a direct, substantial connection between the rights provided by the [PSOPBRA] and the Legislature's asserted purpose." (*Id.* at p. 140.)  The court noted as an example that the administrative appeal provided by PSOPBRA is akin to a grievance system, and stated that such grievance systems are "highly successful devices for helping to maintain labor peace." (*Ibid.*)  The *Baggett* court further explained that the PSOPBRA "impinges only minimally on the specific directives" of Article XI, section 5, subdivision (b) of the

14

Constitution (i.e., the provisions relied on by the City here), as the statute does not purport to regulate officers' compensation, tenure of office or the causes for which they may be removed. (*Id.* at pp. 137–138.) Instead, the statute only affects the *manner* in which officers may be removed or otherwise disciplined. (*Ibid.*) As a general law seeking to assure fair labor practices, the PSOPBRA may constitutionally be applied to charter cities, even though it "impinge[s] upon local control to a limited extent." (*Id.* at pp. 139–140.)

As to the antecedent question whether there is an actual conflict between a state statute and a charter city enactment, the City notes our Supreme Court's admonition that we should "carefully insur[e]" the conflict is a genuine one. (*CalFed*, *supra*, 54 Cal.3d at pp. 16–17.) "To the extent difficult choices between competing claims of municipal and state governments can be forestalled in this sensitive area of constitutional law, they ought to be; courts can avoid making such unnecessary choices by carefully insuring that the purported conflict is in fact a genuine one, unresolvable short of choosing between one enactment and the other." (*Ibid.*)

We are mindful of this principle, but as discussed in part II.B above, we are persuaded that, in this case, there *is* an actual conflict between section 3304, subdivision (b)'s administrative appeal requirement on the one hand, and the City's disciplinary procedure on the other, specifically the City's failure to provide Morgado an opportunity to " ' "attempt to convince the employing agency to *reverse its decision*" ' " to terminate his employment. (*San Diego Police Officers Assn. v. City of San Diego Civil Service Com., supra,* 104 Cal.App.4th at p. 280, italics added [describing purposes of appeal requirement]; see *Caloca v. County of San Diego*, *supra,* 102 Cal.App.4th at pp. 443–444 [administrative appeal under § 3304, subd. (b) "requires 'an "*independent re-examination*" ' of an order or decision made"]; *Doyle, supra,* 117 Cal.App.3d at p. 679.) Because the City failed to provide any opportunity for a re-examination of the decision to terminate Morgado, we reject its argument that there is no actual conflict between state and municipal law here.

We also reject the City's related contention that its procedure is valid under section 3310, which provides a public agency need not follow a particular PSOPBRA procedure if it establishes its own procedure that "at a minimum provides to peace officers the same rights or protections as provided pursuant to [the PSOPBRA]." (§ 3310; see *Crupi*, *supra*, 219 Cal.App.3d at p. 1121.) As discussed, the City's procedure did not provide Morgado the same rights or protections provided by the PSOPBRA, so section 3310 does not apply.

Finally, and despite the holding in *Baggett*, the City contends the PSOPBRA's administrative appeal requirement should not apply to the City because, in light of other procedural protections in the City's existing disciplinary scheme (which it contends exceed those in some other municipalities), the appeal requirement is not "reasonably related" or "narrowly tailored" to the statutory purpose. We disagree. An officer's right to an administrative appeal challenging a punitive action taken against him or her is one of the "basic," "minimum" rights secured by the PSOPBRA. (*Baggett*, *supra*, 32 Cal.3d at p. 135.) We do not construe the statute or *Baggett* as permitting a court to exempt a municipality from this requirement based on the asserted fairness of its disciplinary procedure as a whole.

In sum, as Morgado points out, the City's "home rule" argument rests upon a flawed premise: the City's procedures do not meet, let alone "exceed," the "minimum mandates" of the PSOPBRA, because they do not allow for "an opportunity for administrative appeal" from the "punitive action" ultimately taken against Morgado—i.e., his termination by the Commission. (See § 3304, subd. (b); *Baggett*, *supra*, 32 Cal.3d at p. 135 [The PSOPBRA "is a catalogue of the *minimum* rights (§ 3310) the Legislature deems necessary to secure stable employer-employee relations (§ 3301)." (Italics added.)].) For the foregoing reasons, we reject the City's "home rule" argument.

## III. DISPOSITION

The trial court's judgment and accompanying injunctive order are affirmed.

16

_____

Streeter, J.

We concur:

_____

Ruvolo, P.J.

_____

Rivera, J.

A141681/*Morgado v. City & County of San Francisco*

17

A141681 – Morgado v. City & County of San Francisco

Trial Court:    San Francisco Superior Court

Trial Judge:    Hon. A James Robertson II

Counsel:

Dennis J. Herrera, City Attorney, Elizabeth Salveson, Chief Labor Attorney, Rafal Ofierski, Deputy City Attorney, for Defendant and Appellant.

Carroll, Burdick & McDonough, Greg McLean Adam, Jonathan Yank and Jennifer S. Stoughton for San Francisco Police Officers Association as Amicus Curiae on behalf of Plaintiff and Respondent.

Murphy, Pearson, Bradley & Feeny, James A. Lassart and Adrian G. Driscoll for Plaintiff and Respondent.