Filed 12/3/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CAESAR GONZALEZ,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CITY OF LOS ANGELES et al.,<br><br>    Defendants and Appellants. | B287125<br><br>Los Angeles County<br>Super. Ct. No. BS145766 |
| KOSAL UCH,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CITY OF LOS ANGELES et al.,<br><br>    Defendants and Appellants. | B287249<br><br>Los Angeles County<br>Super. Ct. No. BS166514 |

APPEALS from judgments of the Superior Court of Los Angeles County, Amy D. Hogue, Judge. Reversed.

Michael N. Feuer, City Attorney, Blithe S. Bock, Assistant City Attorney, Paul L. Winnemore and Matthew A. Scherb, Deputy City Attorneys, for Defendants and Appellants.

Stone Busailah, Michael P. Stone and Muna Busailah for Plaintiff and Respondent Caesar Gonzalez.

Rains Lucia Stern St. Phalle & Silver, Jacob A. Kalinski and Christopher D. Nissen for Plaintiff and Respondent Kosal Uch.

––––––––––––––––––

The City of Los Angeles (City) and Chief of Police Charlie Beck (Chief Beck) appeal from trial court judgments granting petitions for writ of mandate filed by former Los Angeles Police Department (LAPD) sergeants Caesar Gonzalez and Kosal Uch. The trial court ordered the City to vacate Gonzalez's and Uch's terminations and provide them with the opportunity for an administrative appeal. In this consolidated appeal, we conclude the City's provision of a hearing before the Board of Rights was the administrative appeal Government Code section 3304, subdivision (b) requires.[1]  We reverse the judgments.

## BACKGROUND

### 1. *LAPD Proceedings (Gonzalez)*

In October 2010, when Gonzalez was an LAPD sergeant living in San Bernardino County, the San Bernardino Sheriff's Department (sheriff's department) began a criminal investigation into allegations that in April 2010 Gonzalez supplied alcohol to a minor (his second cousin by marriage), and had sex with her. After the sheriff's department interviewed Gonzalez in September 2010, he informed his LAPD supervisor, Lieutenant David Crew, that he had given the sheriff's department

––––––––––––––––––

[1]     All subsequent references are to the Government Code unless otherwise noted.

2

a voluntary statement about providing alcohol to a minor, but Gonzalez did not tell Lieutenant Crew about the sex charge until sometime later. In October 2010 Gonzalez reported the alcohol charge, but not the sex charge, on the initial department complaint form (number CF 10-00392). The criminal investigation was closed later without filing charges.

During LAPD's investigation into the alcohol and sex allegations, the Internal Affairs Group interviewed Gonzalez and other witnesses, and obtained from the sheriff's department statements by the minor and her mother. The LAPD investigator prepared a 20-page report, submitted in June 2011 and approved in December 2011. The report listed four allegations: (1) providing alcohol to a minor, (2) sexual intercourse with a minor, (3) attempt to engage in an intimate relationship with a minor, and (4) engaging while off-duty in conduct unbecoming to an officer. The report summarized the evidence, and described the investigation and the criminal investigation in San Bernardino. Gonzalez denied he had sex with the minor, but did not dispute that she drank alcohol with his knowledge. The investigator was unable to determine if Gonzalez and the minor had sex, as there was no physical evidence and no witnesses, and the victim reported the alleged sex five months later.

In March 2012, Gonzalez's commanding officer, Captain Don Schwartzer, adjudicated the allegations, sustaining all but the allegation of sex with a minor, which he classified as unresolved. Captain Schwartzer concluded: "It has been determined that Sergeant Gonzalez committed acts that merit **10 Suspension Days** and his tour at Internal Affairs is not

being extended, as a result he will transfer to another Division outside of Professional Standards Bureau."

After Gonzalez filed a *Skelly* response[2] including additional information, LAPD conducted a supplemental investigation led by Detective Christina Frus, who held additional interviews and obtained and reviewed additional evidence. A 31-page supplemental report retained the first two allegations (providing alcohol to, and having sex with, a minor) and modified the third allegation to state that Gonzalez, while off-duty, unnecessarily placed himself in a compromising position. The supplemental report added six new allegations against Gonzalez: (4) failure to report the criminal investigation in a timely manner, (5) submitting an official complaint form he knew or should have known was inaccurate, (6) omitting critical alleged misconduct from an official complaint form, and (7), (8), and (9), three separate instances of providing misleading information to LAPD.

On September 19, 2012, Captain Schwartzer adjudicated the expanded allegations and sustained them all. In an eight-page supplemental letter of transmittal, he recommended that allegation (2), sexual intercourse with a minor, be reclassified as sustained, based on the evidence and information obtained in the supplemental investigation. Captain Schwartzer evaluated the evidence (the minor reported they had sex and Gonzalez denied it) and found Gonzalez's story unreasonable. Captain Schwartzer also described the evidence supporting the new allegations that Gonzalez failed to report and provided incomplete and inaccurate information. He recommended: "As a result of the supplemental

---

[2]     *Skelly v. State Personnel Board* (1975) 15 Cal.3d 194.

4

administrative investigation, the Department Sustained Allegation 2 from the original complaint investigation and Sustained Allegations 4 through 9. It has been determined that Sergeant Gonzalez committed acts that merit **REMOVAL**."

Also on September 19, 2012, Commander Richard Webb of the Internal Affairs Group reported that he had reviewed the investigation, the supplemental report, and the supplemental adjudications. After consulting with the Professional Standards Bureau, he made a military (modified) endorsement of the complaint, recommending sustaining the first allegation (providing alcohol to a minor) and the second allegation (sex with a minor), and consolidating all the allegations of misleading statements into a single third allegation, which he also recommended be sustained. Commander Webb and Captain Schwartzer both recommended the penalty of "**BOARD OF RIGHTS FOR REMOVAL**" to Chief Beck.

That same day, Chief Beck signed a disciplinary complaint adopting Commander Webb's and Captain Schwartzer's recommendation of removal, temporarily removed Gonzalez from duty (although loss of compensation would not begin for 30 days), and "[d]irect[ed] [Gonzalez] to a Board of Rights with the proposed penalty of removal from your employment with the Department." Captain Schwartzer sent a letter informing the commanding officer of operations of the "CHANGE IN PERSONNEL COMPLAINT PENALTY," describing Chief Beck's concurrence with the changes in the military endorsement: "The Allegations listed have been properly classified as **SUSTAINED** and the original penalty outlined in the original Letter of Transmittal has been changed from 10 suspension days to a *BOARD OF RIGHTS/REMOVAL*."

5

Gonzalez's hearing before the Board of Rights (Board) began on April 23, 2013. After the first day of testimony, the Board suggested amendment of the third allegation to identify specific misleading statements. On April 30, 2013, Chief Beck served Gonzalez with an amended disciplinary complaint that divided the third allegation into two separate allegations: (3) misleading information on Gonzalez's complaint face sheet, and (4) misleading statements in Gonzalez's *Skelly* response.

During seven more days of testimony, the Board heard from numerous witnesses (including the minor and Gonzales), examined exhibits, and reviewed interviews conducted during the investigation. On August 13, 2013, the Board reported a unanimous verdict of guilty on (1) providing alcohol to a minor, (2) sexual intercourse with a minor, and (3) providing misleading information on the complaint form. The Board found Gonzalez not guilty of misleading statements on the *Skelly* response, as no evidence was presented to support the allegation. After deliberation, the Board concluded removal was the appropriate penalty, and conveyed its decision to Chief Beck. Chief Beck executed a removal order on August 29, 2013, effective October 20, 2012. The order was served on Gonzalez on September 4, 2013, and advised Gonzalez of the time limit for seeking judicial review under Code of Civil Procedure section 1094.5.

## 2. *LAPD Proceedings (Uch)*

A minor female reported that on March 3, 2015, she and a friend drove up to park in an area with a view of the valley. While she was having consensual sex with her friend in the back seat of his car, a man opened the car door, pointed his phone flashlight at her, and recorded her, saying he was a police officer

6

and would arrest them for having sex in public. She was wearing only her bra. The man continued to record her while she got dressed, and then made her and her friend pick up trash. He left without giving her a ticket. The minor went home and told her mother, who called the LAPD to report that someone had impersonated a police officer. When Uch's commanding officer learned that Uch wanted to go to the minor's address to take care of the complaint, he became concerned because Uch had had "prior . . . issues up in those hills," including an earlier complaint by two males Uch had confronted in the same area. An initial complaint (CF No. 15-000581) alleged conduct unbecoming an officer.

Sergeant Malcom Collier investigated, interviewing Uch and both minors, and obtaining Uch's audio files, photographs, and cell phone records. (Uch said he had used his cell phone when he believed his department camera had failed.) Following the investigation, the complaint was amended to make four allegations related to the March 2015 incident, the first three concerning Uch's invasion of the minor's privacy, and the fourth concerning his command to pick up other people's trash.[3] Two additional allegations concerned Uch's deletion of digital media from his department camera and his cell phone "sometime after March 3, 2015."

Uch's commanding officer, LAPD Captain Hamilton, adjudicated the allegations. In a five-page letter of transmittal, he recommended sustaining the three allegations of privacy

---

[3]     We grant the City's motion to take judicial notice of the letter of transmittal and the complaint adjudication form related to Uch's discipline.

violation based on the audio recording of the incident and the two allegations of deleting digital media. He recommended classifying the fourth allegation as not resolved. Captain Hamilton recommended Uch be terminated if found guilty after a Board hearing. The area commanding officer also recommended Board review.

On February 10, 2016, Chief Beck adopted the recommendation of removal, and served Uch with a complaint and order listing the 14 sustained allegations and temporarily removing Uch from duty (although loss of compensation would not begin for 30 days after service). The complaint "[d]irect[ed] [Uch] to a Board of Rights with the proposed penalty of removal from your employment with the Department," and stated: "This proposed removal and temporary relief from duty are made pending a hearing before and decision by a Board of Rights on the charge(s) set forth below."

The Board hearing began on August 23, 2016. Uch pleaded guilty to four allegations and contested the remaining 10 allegations. During four days of testimony, the Board heard from numerous witnesses, and reviewed exhibits and interviews from the investigation. On September 7, 2016, the Board made its unanimous findings. The Board found Uch guilty of the three counts of privacy violations on March 3, 2015 ((1) recording with his personal cell phone the minor in a state of undress, (2) refusing to allow the minor privacy to get to dressed in a timely manner, and (3) taking photos with his personal cell phone of the minor and her partner during their detention). The Board also found Uch guilty of all but two of the remaining counts. The Board prescribed removal, and conveyed its decision to Chief Beck on September 7, 2016. Chief Beck executed the

8

removal order on September 14, 2016, effective March 12, 2016. The order informed Uch of the time limit for seeking judicial review under Code of Civil Procedure section 1094.6.

### 3. *Trial court proceedings*

Gonzalez filed a petition for writ of mandate in November 2013 against the City and Chief Beck, contesting the Board's findings. Gonzalez's first amended petition challenged his termination "from his employment after an administrative appeal before a Board of Rights," and his opening brief stated: "The hearing before the Board fulfills the Government Code § 3304(b) requirement of an opportunity for an administrative appeal before imposing punitive action." On March 24, 2015, the trial court denied the writ petition. Gonzalez appealed, and in October 2016 the court of appeal reversed and remanded, finding the trial court abused its discretion when it imposed terminating sanctions based on errors by Gonzalez's counsel. After additional briefing on remand, in August 2017 Gonzalez filed a supplemental letter brief arguing that *Morgado v. City and County of San Francisco* (2017) 13 Cal.App.5th 1 (*Morgado*), decided at the end of June 2017, demonstrated that the LAPD "process did not comply with . . . [section] 3304(b), because Gonzalez was not afforded his right to an administrative appeal of imposed (i.e., 'executed') punitive action."

Uch filed his petition for writ of mandate in December 2016, alleging the City failed to provide him with a fair administrative appeal. In his memorandum of points and authorities filed in July 2017, he cited *Morgado* and argued the City violated section 3304, subdivision (b) when the City "never provided Uch with an administrative appeal of the Chief's order terminating him from his position as a Sergeant with LAPD."

9

The trial court coordinated the hearing on Gonzalez's and Uch's cases because they presented an "identical issue." After reviewing *Morgado*, on September 25, 2017 the court issued an order concluding that the Board hearing was not an appeal, and the City therefore failed to provide the terminated officers with an administrative appeal to challenge the final decision to remove them.  The court directed the city to provide the officers with an administrative appeal, explicitly declining to require the appeal to be an evidentiary hearing like the Board proceeding, or to be held before a different body.  Section 3304, subdivision (b), however, did "require an 'independent re-examination' that is 'conducted by someone who has not been involved in the initial determination' and that the independent decision maker 'must make factual findings that can be reviewed by the courts.' " The court filed the judgments on October 31, 2017.

The City filed timely notices of appeal.  We consolidated the appeals for briefing, argument, and decision.

## DISCUSSION

We must decide the legal question whether, in light of *Morgado*, the City provided Gonzalez and Uch with the administrative appeal required by section 3304, subdivision (b).

The Public Safety Officers Procedural Bill of Rights Act (POBRA) provides in section 3304, subdivision (b):  "No punitive action . . . shall be undertaken by any public agency against any public safety officer . . . without providing the public safety officer with an opportunity for administrative appeal."  "[A]ny action that may lead to dismissal" is a "punitive action."  (§ 3303.) While POBRA does not delineate the required administrative appeal, the purpose of the appeal is to give the officer "an opportunity 'to establish a formal record of the circumstance

10

surrounding his termination' [citation] and 'to attempt to convince the employing agency to reverse its decision, either by demonstrating the falsity of charges which led to punitive action, or though proof of mitigating circumstances.' " (*Binkley v. City of Long Beach* (1993) 16 Cal.App.4th 1795, 1806.) "[P]ublic safety officers are entitled to ' "an evidentiary hearing before a neutral fact finder." ' " (*Conger v. County of Los Angeles* (2019) 36 Cal.App.5th 262, 269, quoting *Morgado, supra,* 13 Cal.App.5th at p. 7.)

Neither Gonzalez nor Uch argues that the Board hearing does not serve that purpose or provide such an evidentiary hearing. They argue only that the City had not made a "final decision" to remove them until after the Board hearing, and so the City must create another (unspecified) procedure to satisfy the statute's requirement of an administrative appeal from a "final" punitive action.

*Morgado* involved a similar argument, but a different disciplinary history. A citizen filed a complaint against Morgado, a San Francisco police officer, with the police department's office of citizen complaints. The office investigated the misconduct, and shared its findings and disciplinary recommendations (unspecified in the opinion) with the chief of police, who under the city charter could impose a sanction of up to 10 days' suspension, or file a complaint with the police commission for harsher sanctions. The department of internal affairs did further investigation, and the chief of police filed a disciplinary complaint with the police commission. A commissioner held a full evidentiary hearing in which Morgado participated. Later, represented by counsel, Morgado participated in a hearing before the full commission, at the end of which the commission

11

sustained four of six counts against him and "decided to terminate his employment." (*Morgado, supra,* 13 Cal.App.5th at p. 4 & fn. 3.)

Morgado sued the city, seeking a writ directing his reinstatement. In discovery, the city admitted "the 'only punitive action undertaken against him' was the Commission's decision to 'terminate [his] employment.' The City further 'admit[ted],' as a factual matter, it did not provide Morgado with an 'administrative appeal' from the Commission's decision to terminate his employment." (*Morgado, supra,* 13 Cal.App.5th at pp. 4-5.) After a bench trial, the trial court issued an order relying on section 3304, subdivision (b), enjoining the commission from taking punitive action against Morgado unless he was provided an administrative appeal. The court vacated the termination, and directed the city to provide Morgado with an opportunity for an administrative appeal from the decision to terminate. The city appealed. (*Morgado,* at p. 5.)

The court of appeal defined the "heart of this appeal [as] whether a 'punitive action' was taken against Morgado, and if so, when that action took place." (*Morgado, supra,* 13 Cal.App.5th at p. 5.) Stating it was not bound by the city's trial court admission that the first and only punitive action was the commission's decision to terminate him, the court considered de novo whether the chief's disciplinary complaint to the commission was a punitive action, so that the commission's proceedings constituted an appeal under section 3304, subdivision (b). (*Morgado,* at pp. 5-7.) The court agreed with the city that the complaint was a punitive action: "[A]n action by an officer's employer that may lead to future discipline may be considered a 'punitive action' within the meaning of section 3304, subdivision (b).

12

Section 3303 provides that 'punitive action means any action that *may lead* to dismissal . . . .' " (*Id.* at p. 7.) But the court qualified its conclusion: "But in our view, it does not necessarily follow that, where an *interim step* in a disciplinary proceeding against an officer (such as a recommendation that further proceedings be conducted) 'may lead' to discipline at the end of that proceeding, a public entity satisfies section 3304, subdivision (b) by permitting the officer to administratively challenge only the interim step and providing him or her no opportunity to challenge the discipline that is ultimately imposed." (*Id.* at p. 8.)

The court concluded that Morgado had the right to an opportunity for an administrative appeal from his termination, which also was a punitive action. "Morgado had no opportunity to attempt to convince the City to reverse its decision to terminate him, because no further administrative proceedings occurred after the Commission made that decision." (*Morgado*, *supra*, 13 Cal.App.5th at p. 8.)[4] The administrative appeal requirement of section 3304, subdivision (b) was not "satisfied by a hearing that *precedes* the employer's selection or imposition of any specific disciplinary sanction. . . . [W]e conclude the City's procedure, in which the Commission hearing precedes any such decision by the City as to which punishment to impose, does not satisfy the administrative appeal requirement, because there is no opportunity for the officer to convince the employer to reverse the decision." (*Morgado*, at p. 12.) Finding Morgado had been

---

4    In a footnote, the court granted the city's request for judicial notice of provisions of the Los Angeles City Charter, but found "distinguishable the cases cited by the City that arose from disciplinary proceedings in Los Angeles." (*Morgado, supra*, 13 Cal.App.5th at p. 13, fn. 8.)

13

deprived of the process he was due under section 3304, subdivision (b), the court of appeal affirmed the trial court's judgment and its directive that the city provide Morgado with an opportunity for administrative appeal. (*Morgado*, at p. 12.) In a statement echoed by the trial court in this case, the court continued: "We do not hold, however, that the City must provide Morgado a second evidentiary hearing akin to the Commission proceeding, or that such a hearing must occur before a body that is separate from the Commission." (*Ibid.*)

We are not faced with facts like those in *Morgado*, and we therefore need not decide whether we agree with its holding. As described in the opinion, the San Francisco disciplinary procedure did not "select[ ] or impos[e] . . . any specific disciplinary sanction" until after the commission hearing, so the hearing "precede[d] any such decision by the City as to which punishment to impose." (*Morgado, supra*, 13 Cal.App.5th at p. 12.) By contrast, for both Gonzalez and Uchs, LAPD identified removal as the specific sanction long before the Board hearing.

Gonzalez's commanding officer Captain Schwartzer first determined that Gonzalez would be suspended for 10 days. After the supplemental investigation resulted in the sustaining of additional allegations (sex with a minor and multiple misleading statements), Captain Schwartzer determined that Gonzalez "committed acts that merit **REMOVAL**" and notified operations that the original penalty "has been changed from 10 suspension days to a ***BOARD OF RIGHTS/REMOVAL***." Commander Richard Webb endorsed the complaint (as modified to consolidate the misleading statements into a single allegation), and concurred with the recommended penalty. Both Commander Webb and Captain Schwartzer recommended a penalty of

14

"**BOARD OF RIGHTS FOR REMOVAL**" to Chief Beck. Chief Beck adopted the recommendation, sending Gonzalez to a Board hearing with the proposed penalty of removal.

In Uch's case, after Sergeant Collier investigated and amended the complaint, Uch's commanding officer Captain Hamilton adjudicated the allegations, sustained all but one of 14, and recommended Uch be directed to a Board hearing and be removed if found guilty. The area commanding officer concurred. Chief Beck adopted the recommendation of removal, and "[d]irect[ed] [Uch] to a Board of Rights with the proposed penalty of removal from your employment with the Department." The Board hearing, unlike the commission hearing in *Morgado,* did not take place before the City decided which punishment to impose; removal was the selected sanction at all levels.

Gonzalez and Uch argue that removal was merely *proposed* by Chief Beck until, after the Board prescribed the penalty of removal to Chief Beck, he *imposed* the sanction of removal, and *Morgado* requires an administrative appeal from that final action. This equates the Chief's selection of removal and the order sending the officers to a Board hearing with Morgado's "*interim step* in a disciplinary proceeding against an officer (such as a *recommendation* that further proceedings be conducted)." (*Morgado, supra,* 13 Cal.App.5th at p. 8, second italics added.) This is a false equation.

Under volume I, article V, section 574, subdivision (c) of the City of Los Angeles Charter (hereafter Charter), the Chief of Police has the power to "appoint, discharge, discipline, transfer and issue instructions to the employees of the department." The Chief has the duty to determine whether an officer will be disciplined after the appropriate predisciplinary investigation,

15

and must serve the officer with a verified complaint "contain[ing] a statement in clear and concise language of all the facts constituting the charge or charges." (Charter, vol. II, art. X, § 1070, subds. (b), (d).) The complaint may, as in Gonzalez's and Uch's case, temporarily remove an officer from duty "pending a hearing before and decision by a Board of Rights," with no loss of compensation for 30 days after service of the complaint. (*Id.*, § 1070, subd. (b)(1)). The complaint may also suspend an officer for 22 or fewer working days, or demote the officer, "subject to the right of the member to a hearing before a Board of Rights." (*Id.*, § 1070, subd. (b)(2)-(4).) In those cases of lesser discipline, if the suspended or demoted officer exercises his right to a Board hearing, the sanction is automatically stayed; if the officer does not apply for a hearing within five days of personal service of the complaint, the hearing is waived and the Chief's suspension or demotion remains effective. (*Id.*, § 1070, subds. (b), (f).) But if, as here, the charges call for discipline of more than 22 days of suspension, the Chief *must* order a Board hearing to review the charges and reach a decision. (*Id.*, § 1070, subd. (b)(1), (2).) The Board conducts a de novo hearing at which LAPD has the burden of proof. (*Id.*, § 1070, subds. (f), (l).) Here, Gonzalez's and Uch's Board hearings were not optional ("opted") but *mandated* ("ordered"), because the Chief's selected sanction was the ultimate penalty of removal and the Charter required automatic Board review.

Gonzalez and Uch wisely do not argue that a Board hearing is inadequate to satisfy POBRA's requirement of an administrative appeal. We have already held that a Board hearing satisfies POBRA. In *Jackson v. City of Los Angeles* (1999) 69 Cal.App.4th 769, the chief's complaint specified

a disciplinary suspension of five days, and the officer opted to appeal to the Board. (*Id.* at p. 772.) Following the hearing, the Board majority voted to impose a 129-day suspension, and the minority voted for the officer's dismissal. (*Id.* at pp. 773-776.) The chief adopted the recommendation of 129 days' suspension. Jackson filed a petition for writ of mandamus, the trial court denied the writ, and Jackson appealed. (*Id.* at p. 776.) We affirmed, holding that a board of rights hearing satisfies the "mandated appellate process" in section 3304, subdivision (b) of POBRA, even when the Board increases the severity of the initial punitive action. (*Jackson*, *supra*, 69 Cal.App.4th at pp. 780, 782; see *Holcomb v. City of Los Angeles* (1989) 210 Cal.App.3d 1560, 1567 [Board hearing on five-day suspension was the required administrative appeal].) In *Crupi v. City of Los Angeles* (1990) 219 Cal.App.3d 1111, 1120, the chief of police recommended an officer "be subjected to 'administrative disapproval.' By so recommending, the chief of police initiated a process through which the matter would be adjudicated by a board of rights pursuant to . . . the Los Angeles City Charter. Thus, plaintiff *is* being afforded a right to an administrative appeal as required by section 3304."

Gonzalez and Uch argue these cases do not apply because those Boards were opted, rather than ordered as in this case. They argue because the Board hearing is *required* the selected sanction in the Chief's complaint is not "final," there is no "final" sanction until after the Board hearing when the Chief executes the removal order, and POBRA requires an administrative appeal from that "final" sanction. But in a case involving lesser discipline where the officer opts for Board review of the sanction in the Chief's complaint, Board review is the same, and we have

17

held that Board review satisfies POBRA. Board review also satisfies POBRA in the case of an ordered Board.

Whether the Chief's selected sanction of removal is "final" is the wrong question. A final, appealable order or judgment is the requirement for a judicial appeal. (*County of Los Angeles v. Los Angeles County Civil Service Com.* (2018) 22 Cal.App.5th 174, 186-187.) The Board hearing is an administrative appeal from the Chief's complaint selecting removal as the sanction; it is an evidentiary hearing involving de novo factfinding. Judicial review of the Chief's execution of the order of removal after the Board's decision is available by writ under Code of Civil Procedure section 1094.5 and, as in this case, by a judicial appeal of the trial court's decision.

Under the Charter, an officer is entitled to an administrative appeal to the Board regardless of the severity of the sanction, but when the Chief selects a lesser sanction the officer may forgo Board review if he or she chooses. The Charter obligates the Board to review the selected sanction only when the Chief selects the ultimate sanction of removal. This provides more protection to an officer's POBRA right to an administrative appeal than when the Chief selects a lesser sanction, because an automatic administrative appeal guarantees that a neutral factfinder will conduct a de novo review of the evidence supporting the discipline. The Charter's requirement of a Board hearing when the Chief selects removal bakes into the standard procedure what POBRA requires: an administrative appeal for the officer to establish a formal record of the circumstances surrounding his removal, and to attempt to convince LAPD to change the sanction. We decline to require more than POBRA mandates.

18

## DISPOSITION

The judgments are reversed.  Costs are awarded to appellants the City of Los Angeles and Chief Charlie Beck.

**CERTIFIED FOR PUBLICATION**



EGERTON, J.

We concur:



DHANIDINA, J.



HANASONO, J[*]

---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.