Filed 10/1/20  Byrne v. Santa Cruz County CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| ANTOINETTE JARDINE BYRNE, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> SANTA CRUZ COUNTY et al., <br><br> Defendants and Respondents. | H045598 <br> (Santa Cruz County <br> Super. Ct. No. CV164568) |

Pro per plaintiff Antoinette Jardine Byrne appeals after the trial court entered judgment in favor of the County of Santa Cruz, the Santa Cruz County Board of Supervisors, and various county employees and officials (collectively, the County).  In her operative pleading, Byrne alleged that the County violated state law and her civil rights by issuing a notice of violation (NOV) based on her conversion of a barn on her property into a residence without obtaining the necessary permits, and by enforcing certain local ordinances which she claims were preempted by state law.  Her case was initially removed to federal court and, upon disposition of Byrne's federal civil rights claims in favor of the County, remanded back to Santa Cruz County Superior Court.  Byrne's motion for leave to amend her complaint was denied by the trial court, and the County successfully moved for summary judgment on Byrne's remaining state law claims.

On appeal, Byrne argues the trial court erred in denying her leave to amend her complaint and in granting the County's motion for summary judgment. For the reasons discussed below, we disagree and will affirm the judgment.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Our ability to accurately describe the factual and procedural history of this case is limited, due in large part to Byrne's briefing, which is dense and often disjointed, as well as her failure to procure an adequate record.[1] The following is based on what we can glean from the record and the briefing provided.

According to the parties, Byrne's original complaint in Santa Cruz County Superior Court Case No. CV164568—which is also not included in the clerk's transcript (*ante*, fn. 1)—was removed to federal court by the County in August 2009.[2] While the action was pending in federal court, Byrne filed a second amended complaint.[3]

### A.  *Second amended complaint*

In her second amended complaint, filed in the United States District Court for the Northern District of California on October 12, 2010 (Case No. 03729-JF), Byrne alleges that she purchased the subject real property, located in Santa Cruz County, in July 1999. Between 1999 and 2001, she obtained the following permits for work on that property: (1) a permit to dig a supplemental well; (2) a permit to replace the sewage system; (3) a permit to rewire the electrical system; and (4) an individual water supply permit. In July

---

[1] Byrne did not provide reporter's transcripts for either the hearing on her motion for leave to file an amended complaint or the hearing on the County's motion for summary judgment. The clerk's transcript, which consists of five volumes spanning over 1400 pages, does not include copies of either her motion for leave to file an amended complaint or the proposed amended complaint she wished to file.

[2] There appears to be no dispute that this pleading was filed on July 19, 2009 and it was removed to federal court because it included a cause of action entitled "Violation of Civil Rights, 42 U.S.C. 1983."

[3] Byrne's second amended complaint is included in the clerk's transcript, but only because it was an exhibit submitted with the County's opposition to Byrne's motion for leave to file a third amended complaint.

2007, "[d]efendants entered [Byrne's] property . . . and posted an alleged 'Notice of Violation [NOV].' " The NOV cited Byrne for "construction without required permits; conversion of barn to habitable including construction of interior partition walls to create a bedroom and full bathroom; plumbing and electrical work; . . . [and] violation of setback requirements—shed within front yard setback."

Byrne's first cause of action, entitled "Uniform Building Code," alleges that she was instructed by the County to submit a "building permit" application "in order for the [NOV] to be removed." However, the ordinance underlying this instruction is void because that ordinance states that the Santa Cruz County Building Code is based on the California Building Code, rather than the Uniform Building Code as required by Health and Safety Code section 17958.[4]

The second cause of action, labeled "Notice of Violation," alleges that the County failed to adopt the latest edition of the Uniform Housing Code, as required by section 17958, and therefore the NOV was void as it conflicted with state law. Byrne's third cause of action, entitled "Hearing," alleges that her due process rights were violated because the administrative hearing officer (AHO) who presided over the 2007 administrative hearing on her NOV was hired by the County under Santa Cruz County Code 1.12.070, but that ordinance is preempted by state law, depriving him of jurisdiction.

The fourth[5] cause of action, "Decision," alleges that the administrative hearing decision issued on April 9, 2008, provides a notice that she had the right to appeal "pursuant to Government Code section 53069.4," but that expressly conflicts with section 17980.8 which provides that the " 'exclusive remedy of administrative hearing' is Code of Civil Procedure § 1094.5." Byrne's fifth cause of action, entitled "Penalties—

---

[4] Unspecified statutory references are to the Health and Safety Code.

[5] The second amended complaint erroneously lists this as another "third" cause of action, and therefore every subsequent cause of action is also misnumbered.

Enforcement Costs," alleges that the AHO imposed enforcement costs of $5,420.49, but section 17995 does not allow for penalties in excess of $1,000.

The sixth cause of action, "Penalties—Civil," alleges that the administrative hearing officer improperly imposed civil penalties of $1,000 against her. Under section 17922, subdivision (g) "a local ordinance may not permit any action or proceeding to abate violations of regulations on existing buildings, unless the building is a substandard building or the violation is a misdemeanor."

Byrne's seventh cause of action is, like the second cause of action, labelled "Notice of Violation." In this cause of action, Byrne alleges that, following the April 9, 2008 administrative hearing order, the County issued a second NOV which was "recorded with the County Recorder's Office on April 15, 2008." This recordation was unlawful because the County "never recorded a pending action" against her property and NOVs may not be recorded against real property pursuant to Government Code section 27201.

Finally, the eighth cause of action, labelled "Appeal to Appeals Board," alleges that Byrne was precluded from timely taking an appeal to the "Appeals Board" because the "Building Appeals and Housing Appeals Board was disbanded before her appeal could be heard." Byrne alleges that "an appeal to the 'Housing & Building Appeals Board' or 'Appeals Board' was made on 12 May 2009 . . . but on June 3, 2009, [the County] dissolved the Appeals Board, in conflict with preempted [*sic*] State Law Uniform Housing Code and Health & Safety Codes."

### B. *Disposition of federal claims and proceedings following remand to state court*

On September 28, 2012, the federal court granted the County's motion for summary judgment and remanded Byrne's remaining state law claims. In January 2013, Byrne sought leave to file a third amended complaint in the Santa Cruz County Superior Court. As noted above, in footnote 1, the clerk's transcript does not include a copy of

4

that motion or Byrne's proposed third amended complaint. According to the County's opposition to the motion, Byrne's "proposed [Third Amended Complaint] is very similar to her original complaint . . . [and] seeks to add previously omitted defendants and causes of action . . . [as well as] property tax related causes of action that were already the subject of [Byrne]'s related [tax refund] action."

The trial court heard Byrne's motion for leave to amend her complaint on September 11, 2014. On October 2, 2014, the trial court denied her motion in a written order, finding that Byrne had failed to justify the "long delay in presenting this amendment[,] . . . [and] plaintiff's proposed amendments fail to state a claim as they are either time barred or bar[r]ed by collateral estoppel." In a nonpublished opinion, this court dismissed Byrne's purported appeal from that order because "the order was interlocutory and nonappealable." (*Byrne v. County of Santa Cruz et al.* (Aug. 18, 2017, H041518).)

### C. *Summary judgment*

The County filed a motion for summary judgment or, in the alternative, summary adjudication[6] arguing that: (1) its "ordinances and code enforcement procedures are not preempted by State law"; (2) the County "did not impose excessive or improper fees"; (3) Byrne "is precluded from seeking any relief related to the Administrative Hearing"; (4) Byrne "was not entitled to appeal to the Appeals Board"; (5) Byrne "does not identify any mandatory duty violated by" the County; and (6) "the undisputed facts show that the County did not violate California Civil Code section 52." In support of its motion, the County submitted a separate statement of undisputed material facts, along with various declarations and exhibits.

---

[6] The record includes the County's notice of motion, three supporting declarations including exhibits, and a separate statement of undisputed material facts, but not its memorandum of points and authorities.

Byrne filed an opposition, followed by an "amended" opposition supported by a request for judicial notice of 15 exhibits, which the trial court treated as the operative pleading. Byrne did not submit a separate statement of undisputed material facts with her opposition, though she did embed lists of "undisputed" and "disputed" facts within her memorandum of points and authorities. Byrne cited no evidence to support any of her 27 purportedly "undisputed" facts[7] and only cited two exhibits in support of two of her nine "disputed" facts.

Following a hearing, the trial court granted the County's motion for summary judgment by written order filed February 23, 2018. Judgment was entered on that same date.

Byrne timely appealed.[8]

## II. DISCUSSION

Before addressing the arguments raised on appeal, we briefly set forth some of the general principles which govern appellate review.

In conducting our review, we presume that a judgment or order of a lower court is correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) " 'All intendments and presumptions are indulged to support [the judgment] on matters as to which the record is silent, and error must be affirmatively shown.' " (*Ibid.*) To affirmatively show error, a party challenging a judgment or an appealable order has the burden of producing and citing to an adequate record. (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 574 (*Ballard*); Cal. Rules of Court, rule 8.204(a)(1)(C) [matters referenced from the record in appellate briefs

---

[7] Although Byrne's list of "undisputed" facts begins with "Fact #1" and ends with "Fact #28," "Fact #14" is not followed by any text whatsoever.

[8] Byrne's appeal is technically premature as she filed her notice of appeal on February 21, 2018, two days before judgment was entered against her. However, because the notice of appeal was filed *after* the trial court announced its tentative ruling on the County's motion for summary judgment, we will treat the notice as having been filed immediately after entry of judgment. (Cal. Rules of Court, rule 8.104(d)(2); *Thompson v. Ioane* (2017) 11 Cal.App.5th 1180, 1189.)

6

must be supported "by a citation to the volume and page number of the record where the matter appears"].)

The appellant must also present argument supported by relevant legal authority as to each issue raised on appeal. " '[E]very brief should contain a legal argument with citation of authorities on the points made. If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration.' " (*People v. Stanley* (1995) 10 Cal.4th 764, 793.)

Byrne is not exempt from compliance with these rules because she is representing herself. A party who chooses to act as his or her own attorney " 'is to be treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys.' " (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1247.)

### A. *Requests for judicial notice*

In connection with the instant appeal, Byrne filed separate requests for judicial notice on February 10, 2020 (February RJN), August 12, 2020 (August RJN), and September 14, 2020 (September RJN).

In her February RJN, Byrne seeks judicial notice of the following: (1) *Lippman v. City of Oakland* (2017) 19 Cal.App.5th 750; (2) Civil Code section 4751, Senate Bill No. 330, Assembly Bill No. 881, Assembly Bill No. 68, and Senate Bill No. 13; (3) a document prepared by legal counsel for the California Sign Association explaining the Permit Streamlining Act (Gov. Code, § 65920 et seq.); and (4) a post from a website entitled "Labor & Employment Law Blog" discussing the decision in *Dynamex Operations W. v. Superior Court* (2018) 4 Cal.5th 903. (See Evid. Code, §§ 452, subd. (d), 459.)

In her September RJN, which appears to be substantively identical to her August RJN, Byrne seeks judicial notice of: (1) A declaration of Claire Machado, executed on July 26, 2020; (2) excerpts from the 2009 depositions of Susan Mauriello, Ken Hart, and Kevin Fitzpatrick, all of which were taken in an unrelated civil proceeding (*Oracle et al.*

*v. County of Santa Cruz et al*., Santa Cruz County Superior Court No. 09-00373 JF); (3) a copy of a May 29, 2009 letter from the County Administrative Office to the County Board of Supervisors; (4) an unauthenticated transcript of (then) County Counsel Dana McRae's response to a question posed by a member of the County Board of Supervisors at the August 19, 2008 Board of Supervisors meeting plus an unattributed paragraph criticizing the Board's dissolution of the Building, Accessibility, and Fire Code Appeals Board in 2009; (5) several pages excerpted from the Santa Cruz County Grand Jury 2007-2008 Final Report plus an unattributed 2-page "citizen response"; (6) an unauthenticated copy of an organizational chart for the Santa Cruz Planning Department purportedly in effect in June 2005; and (7) miscellaneous documents including an undated memorandum from David Laughlin and Ken Hart to "Code Compliance Staff," one or more documents which appear to be redlined draft versions of internal County documents discussing collections procedures for code violations, hearing officer process, and property tax collection procedures, as well as the first page of a March 9, 1993 opinion from the California Attorney General (Opinion No. 92-506) discussing local agencies and building permit fees.

"Reviewing courts generally do not take judicial notice of evidence not presented to the trial court." (*Vons Companies*, *Inc*. *v*. *Seabest Foods*, *Inc*. (1996) 14 Cal.4th 434, 444, fn. 3.) Judicial notice should be taken only of relevant matters. (*Ketchum v*. *Moses* (2001) 24 Cal.4th 1122, 1135, fn. 1.)

We deny the February RJN and September RJN in their entirety.[9] There is no indication that any of these materials were presented to the trial court in the first instance or that the trial court took judicial notice of any of them. As for the *Lippman* decision and Civil Code section 4751, published California decisions and California statutes are citable authority without the need for judicial notice. Senate Bill No. 330, Assembly Bill

---

[9] The August RJN was denied by separate order on September 1, 2020.

No. 881, Assembly Bill No. 68, and Senate Bill No. 13 became effective on January 1, 2020, but Byrne fails to adequately explain the relevance of those statutes to events which took place in the late 2000s. Similarly, Byrne does not adequately explain the relevance of the document purporting to explain the Permit Streamlining Act to this case. Finally, although *Dynamex* itself is citable authority, we are not obligated to take judicial notice of a blog post analyzing that decision.

### B. *Motion for leave to amend*

A trial court has wide discretion to allow the amendment of pleadings and the exercise of that discretion will not be disturbed on appeal absent a showing of " ' "manifest or gross abuse of discretion." ' " (*Melican v. Regents of University of California* (2007) 151 Cal.App.4th 168, 175.) "Nevertheless, it is also true that courts generally should permit amendment to the complaint at any stage of the proceedings, up to and including trial." (*Ibid.*) There are, however, exceptions to the liberal policy of allowing amendment. For example, that policy will not prevail where the opposing party will be prejudiced by the amendment. (*Magpali v. Farmers Group*, (1996) 48 Cal.App.4th 471, 487.) And "unwarranted delay in presenting [the amendment] may—of itself—be a valid reason for denial" (*Roemer v. Retail Credit Co.* (1975) 44 Cal.App.3d 926, 939-940) on grounds of "lack of diligence in offering the amendment after knowledge of the facts." (*Id.* at p. 940; *Melican*, *supra*, at p. 175 ["appellate courts are less likely to find an abuse of discretion where, for example, the proposed amendment is ' "offered after long unexplained delay . . . or where there is a lack of diligence" ' "].)

Here, Byrne has failed to present the relevant, essential documents from the court below that are necessary to adequately address her challenge to the order denying her leave to file an amended complaint. Without Byrne's proposed third amended complaint or her moving papers, we have no way to gauge whether the trial court abused its discretion in denying her leave to file that pleading. As a result, we are bound to resolve the issue against her. (*Ballard*, *supra*, 41 Cal.3d at p. 574.)

9

### C. *Motion for summary judgment*

#### 1. *Standard of review and applicable legal principles*

On appeal from the granting of a motion for summary judgment, the reviewing court "examine[s] the record de novo, liberally construing the evidence in support of the party opposing summary judgment and resolving doubts concerning the evidence in favor of that party." (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460.)

A trial court properly grants a motion for summary judgment when there is no triable issue of material fact and the moving party is entitled to a judgment as a matter of law. (Code Civ. Proc., § 437c.) A defendant moving for summary judgment has the burden of demonstrating that one or more elements of the plaintiff's cause of action cannot be established, or that there is a complete defense to that cause of action. (*Id.*, subd. (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849 (*Aguilar*).) Once the defendant meets that burden, justifying a finding in its favor as to one or more elements of the cause of action, the burden shifts to the plaintiff to show that a triable issue of material fact exists as to that cause of action or the defense. (Code Civ. Proc., § 437c, subd. (p)(2).)

The plaintiff opposing summary judgment may not "rely upon the allegations or denials of its pleadings" but must set forth "specific facts" beyond the pleadings to show the existence of a triable issue of material fact. (Code Civ. Proc., § 437c, subd. (p)(2).) A triable issue of fact exists if "the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar*, *supra*, 25 Cal.4th at p. 850.)

Code of Civil Procedure section 437c, subdivision (b)(3) requires an opposition to a motion for summary judgment to include a separate statement "that responds to each of the material facts contended by the moving party to be undisputed, indicating if the opposing party agrees or disagrees that those facts are undisputed." Under California Rules of Court, rule 3.1350(f)(2), the separate statement is supposed to "unequivocally

state whether the fact is 'disputed' or 'undisputed,' " and to describe in a certain format "the nature of the dispute and describe the evidence that supports the position that the fact is controverted" with citation to exhibit, title, page, and line numbers in the evidence submitted. (*Ibid.*) "Failure to comply with this requirement of a separate statement may constitute a sufficient ground, in the court's discretion, for granting the motion." (Code Civ. Proc., § 437c, subd. (b)(3).) However, before the inadequacy of an opposing separate statement can be deemed dispositive, the primary inquiry must be whether the moving party has made an adequate showing of entitlement to summary judgment. (*Whitehead v. Habig* (2008) 163 Cal.App.4th 896, 900-903.)

2.     *Analysis*

Since Byrne failed to submit the necessary separate statement in connection with her opposition papers, the trial court would have acted well within its discretion had it granted the County's motion on that basis alone. (Code Civ. Proc., § 437c, subd. (b)(3).) Despite that failure, the trial court undertook the difficult task of analyzing Byrne's claims in light of the evidence submitted before concluding that Byrne had failed to set forth specific facts showing that triable issues of material fact existed as to any of her causes of action.

We begin our de novo review of whether the County was entitled to summary judgment by determining the scope of Byrne's claims set forth in her second amended complaint. Based on that pleading, the entirety of Byrne's action is premised on the following assertion: The County's ordinances underpinning the NOV, the administrative hearing, and everything which followed, are preempted by state law, rendering the ordinances void and the County's actions undertaken pursuant to those ordinances a violation of her due process rights. As we discuss below, that assertion is both unfounded and unsupported by the limited evidence presented by Byrne.

Article XI, section 7 of the California Constitution provides that a county "may make and enforce within its limits all local, police, sanitary, and other ordinances and

11

regulations not in conflict with general laws."  "An ordinance that conflicts with state law is void.  [Citations.]  'Conflicts exist if the ordinance duplicates [citations], contradicts [citation], or enters an area fully occupied by general law, either expressly or by legislative implication [citations].  If the subject matter or field of the legislation has been fully occupied by the state, there is no room for supplementary or complementary local legislation, even if the subject [was] otherwise one properly characterized as a "municipal affair." ' " (*Building Industry Assn. v. City of Livermore* (1996) 45 Cal.App.4th 719, 724 (*Building Industry Assn.*).)

"[T]he Legislature has expressed an intent to fully occupy the field of building standards relating to housing."  (*Building Industry Assn.*, *supra*, 45 Cal.App.4th at p. 724.)  The State Housing Law defines the term "building standard" (§ 17920, subd. (c)) by reference to section 18909, which is contained within the California Building Standards Law (§ 18901 et seq.).  Section 18909 generally defines "building standard" to include "any rule, regulation, order, or other requirement . . . that specifically regulates, requires, or forbids the method of use, properties, performance, or types of materials used in the construction, alteration, improvement, repair, or rehabilitation of a building, structure, factory-built housing, or other improvement to real property, including fixtures therein, and as determined by the [California Building Standards Commission]."  (§§ 18909, subd. (a), 18912.)  According to section 18909, the term "building standard" also "includes a regulation or rule relating to the implementation or enforcement of a building standard not otherwise governed by statute, but does not include the adoption of procedural ordinances by a city or other public agency relating to civil, administrative, or criminal procedures and remedies available for enforcing code violations."  (§ 18909, subd. (c).)

"The State Housing Law [(§ 17910 et seq.)] requires the state to adopt statewide building standards for residential housing."  (*Building Industry Assn.*, *supra*, 45 Cal.App.4th at p. 725; §§ 17920, subd. (d), 17921, 17950.)  As a result, the building

12

standards and rules and regulations must impose "substantially the same requirements" as are contained in various uniform industry codes, including the Uniform Housing Code and the Uniform Building Code. (§ 17922, subd. (a); *Baum Electric Co. v. City of Huntington Beach* (1973) 33 Cal.App.3d 573, 577.) The requirements are applicable to every city and county. (§ 17958; *Martin v. Riverside County Dept. of Code Enforcement* (2008) 166 Cal.App.4th 1406, 1413; *Building Industry Assn., supra*, at p. 725.) "[A] local government is precluded from enacting building standards that differ from state standards unless a state statute specifically authorizes the local government to do so." (*Building Industry Assn., supra*, at p. 724; see also *id.* at p. 727.)

Byrne misconstrues the County's ordinances relating to public nuisances, such as unpermitted construction and violation of setback requirements, as attempts to occupy the same field as state-mandated "building standards." With no preemption, all of Byrne's claims fail.

Byrne cites *Briseno v. City of Santa Ana* (1992) 6 Cal.App.4th 1378 to support her preemption argument. In *Briseno*, the Court of Appeal determined that the Legislature has expressed an intent "to occupy the field of occupancy standards," and thus local occupancy ordinances are generally preempted. (*Id.* at p. 1381; see also *id.* at p. 1382.) The occupancy standard or ordinance at issue in *Briseno* pertained to the minimum size of the dwelling unit and the number of occupants, and it conflicted with the occupancy standards set forth in the Uniform Housing Code, as adopted by the State Housing Law. (*Briseno, supra*, at pp. 1379-1380; see § 17922, subd. (a); Cal. Code Regs., tit. 25, § 32.)

In this case, however, the NOV was based on the lack of permits and the violation of setback requirements, *not* occupancy standards. Byrne fails to explain how the County ordinances at issue with respect to her property pertain to occupancy standards, and thus *Briseno* is not helpful to her.

Byrne attached to her opposing papers certain Health and Safety Code sections that she believes preempt the County ordinances that support the NOV. She does not,

however, clearly articulate how any specific County ordinance " 'duplicates [citations], contradicts [citation], or enters an area fully occupied by general law, either expressly or by legislative implication [citations].' " (*Building Industry Assn.*, *supra*, 45 Cal.App.4th at p. 724.)  She also does not explain how the County's ordinances, which require property owners within its jurisdiction to obtain permits before undertaking construction, are instead ordinances which improperly establish building standards different from those required under the State Housing Law.  (*Id*. at pp. 724, 725.)

Byrne also cites section 17922, subdivision (g), which provides that "[a] local ordinance may not permit any action or proceeding to abate violations of regulations governing maintenance of existing buildings, unless the building is a substandard building or the violation is a misdemeanor."  However, she does not explain how the County's code enforcement in this case falls within the meaning of section 17922, subdivision (g).  Subdivision (g) pertains to a local ordinance directed at "violations of regulations governing maintenance of existing buildings."  (§ 17922, subd. (g); see, e.g., Cal. Regs., tit. 25, § 32 et seq. [regarding maintenance of existing buildings].)  The County Code issued an NOV because Byrne failed to obtain necessary permits before constructing improvements and a structure on her property violated setback requirements. Byrne has not identified the regulations, if any, governing the maintenance of existing buildings that were violated and that would have, pursuant to section 17922, subdivision (g), restricted the County's ability to seek injunctive and other relief in this case.

In its motion, the County met its initial burden of demonstrating that Byrne could not establish the necessary elements of her claims for relief and Byrne provided no evidence or facts in her opposition which raised a triable issue of material fact.  The trial court properly entered judgment in the County's favor.

## III.  DISPOSITION

The judgment is affirmed.  Respondents shall recover their costs on appeal.

14

_____

Premo, Acting P.J.

WE CONCUR:

_____

Elia, J.

_____

Danner, J.

Byrne v. Santa Cruz County et al.
H045598